**Theodore L. and Imogene PIERCE, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. A. No. 1016.**

United States District Court
W. D. Arkansas,
Hot Springs Division.

July 17, 1967.

Smith, Williams, Friday & Bowen, Little Rock, Ark., for plaintiffs.

John O. Jones, Howard A. Weinberger, Attys., Tax Div., Dept. of Justice, Fort Worth, Tex., for defendant.

## OPINION

JOHN E. MILLER, District Judge.

This is a civil action for refund of federal income taxes and assessed interest in

the amount of $4,460.13 for the calendar years 1960, 1961 and 1962. The plaintiffs, Theodore L. and Imogene Pierce (Theodore Pierce is hereinafter referred to as the "taxpayer"), filed their complaint on March 11, 1966, seeking recovery of the aforementioned sum.

The complaint, containing three counts, sets forth only general allegations stating that the returns for the years in question were filed claiming certain deductions for expenses; that the deductions were wrongfully disallowed; and that the amount claimed was wrongfully assessed and collected. Each count prayed for recovery in the amount assessed and paid for each of the three years: $1,252.16 for 1960; $1,560.71 for 1961; and $1,-647.26 for 1963; or a total of $4,460.13. Though not set forth specifically in the complaint it is the taxpayer's contention that he is a citizen of the United States and a resident of Hot Springs, Arkansas; and that he works at horse racing tracks in Hot Springs and various other cities in the United States, usually as a steward or secretary, during the year. He contends that he has been so occupied for several years prior to, including, and after the years in question. The taxpayer's ultimate contention (which forms the basis for this controversy) is that while he was employed at the tracks away from Hot Springs, he was "away from home" and, as such, is entitled to deduct his expenses there incurred, including food and lodging expenses for 1961 and 1962, and also automobile expenses while traveling daily from his quarters to the track where he was employed for 1960–1962.[1]

The answer filed by the Government on May 11, 1966, admits all of the allega-tions of the complaint except those alleging that the amounts were wrongfully assessed and collected. It is the Government's contention that the taxpayer was not "away from home" while he was employed in Cleveland, Ohio, because, during the years in question, the taxpayer spent more working days there than anywhere else, and therefore Cleveland became his "home" for income tax purposes. And, since he was not "away from home," taxpayer is not entitled to deduct sums expended for food, lodging and travel while in Cleveland.

Jurisdiction and venue are conferred on this court by 28 U.S.C.A. §§ 1346 and 1402. The evidence presented is in the form of a stipulation, the deposition of the taxpayer, and various other documents, filed May 22, 1967, and "Reply to Request for Admission of Facts" and "Answers to Interrogatories" filed by the plaintiff on August 17, 1966. There is no factual dispute, but because of the nature of the controversy and the facts upon which similar cases have been decided, it is felt that the material and relevant facts in the instant case should be set forth rather fully in order that they may be compared with or contrasted to the facts in prior adjudicated cases from this and other circuits.

The statements contained in the Stipulation relevant to the controversy are as follows:

"11. During the years 1960, 1961 and 1962, the Plaintiff was employed by various race tracks as a steward and a racing secretary. Plaintiff's wife is a housewife and accompanies him on his trips away from the Hot Springs area.

1. In addition to the expenses for food, lodging, and travel, the plaintiffs claimed that certain other deductions were wrongfully disallowed. For 1960 (Count 1) the plaintiffs deducted sums received from a judicial decision; for 1961 (Count 2) deductions were claimed for medical and dental expenses; and for 1962 (Count 3) more medical and dental expenses and an investment credit. By stipulation filed May 22, 1967, the parties agreed to the items claimed in Counts 1 and 2. The items claimed in Count 3, the investment credit and medical and dental expenses, were not referred to in the stipulation and these items have not been considered in the opinion because no evidence was presented on the questions nor were they briefed.

"12.  The Plaintiffs have maintained a year-round residence at Hot Springs, Arkansas, since 1951.  In 1960, they purchased a house at 115 Brookstone Drive, Hot Springs, Arkansas.  Prior to that, they maintained an apartment at 2510 Central Avenue on a yearly basis.  The Plaintiffs pay state income tax to the State of Arkansas, pay personal and real property taxes to Garland County, Arkansas, pay Arkansas poll taxes, vote in Arkansas, file their federal income tax returns in Arkansas, have Arkansas drivers' licenses and drive an automobile with Arkansas license plates.  All of the Plaintiffs' bank accounts and charge accounts are maintained in Hot Springs, Arkansas.  When the Plaintiffs are away from Hot Springs, they have their mail forwarded to them.  The Plaintiff has worked for Oaklawn Jockey Club, Hot Springs, Arkansas, in every year since 1935, with the exception of the war years.

"13.  In the year 1957, the Plaintiff worked at Oaklawn Jockey Club, Hot Springs, Arkansas, for 34 days, at Thistledown Racing Club, Cleveland, Ohio, for 38 days, and for varying lengths of time at race tracks at Grand Island, Nebraska; Madison, Nebraska; Columbus, Nebraska; Lincoln, Nebraska; Mitchell, Nebraska; Alliance, Nebraska; and Lexington, Kentucky.

"14.  In the year 1958, the Plaintiff worked at Oaklawn Jockey Club, Hot Springs, Arkansas, for 34 days; at Riverdowns Racing Club, Cincinnati, Ohio, for 44 days, and for varying lengths of time at race tracks at Grand Island, Nebraska; Madison, Nebraska; Columbus, Nebraska; Lincoln, Nebraska; Mitchell, Nebraska; Alliance, Nebraska; and South Sioux City, Nebraska.

"15.  In the year 1959, the Plaintiff worked at Oaklawn Jockey Club, Hot Springs, Arkansas, for 34 days, Riverdowns Racing Club, Cincinnati, Ohio, for 44 days and for varying lengths of time at race tracks at Grand Island, Nebraska; Madison, Nebraska; Columbus, Nebraska; Lincoln, Nebraska; Mitchell, Nebraska; Alliance Nebraska; and South Sioux City, Nebraska.

\*      \*      \*      \*      \*      \*

"19.  In 1963, the Plaintiff worked at Oaklawn Jockey Club, Hot Springs, Arkansas, for 50 days, and Thistledown Racing Club, Inc., Randall Racing Club and Cranwood Racing Club, Inc., all in Cleveland, Ohio, for a total of 155 days.

"20.  The Plaintiff's employment in the year 1964 was the same as that in the year 1963.

"21.  In the year 1965, the Plaintiff worked at Oaklawn Jockey Club, Hot Springs, Arkansas, for 50 days, Hazel Park, Detroit, Michigan, for 88 days, and Beulah Park Jockey Club, In., Columbus, Ohio, for 19 days.

"22.  In 1966, the Plaintiff worked at Oaklawn Jockey Club, Hot Springs, Arkansas, for 50 days, Beulah Park Jockey Club, Inc., Columbus, Ohio, for 50 days, Cincinnati Turf Club, In., Cincinnati, Ohio, for 50 days, and Riverdowns Jockey Club, Cincinnati, Ohio, for 50 days.

"23.  The Plaintiffs' living quarters away from Hot Springs generally consists of an apartment containing one bedroom, a living room and kitchen.  There is no lease signed and the facilities are rented on a monthly basis.

"24.  Plaintiff has no commitment for future employment when he leaves a particular track at the end of its meet.  He does not receive requests to return to any track until between January 15 and January 20 in the year of the track's racing meet.

"25.  In any of the years involved, when the Plaintiff was not actually working in a race track away from the Hot Springs area, he was at his residence in Hot Springs.  During this time, he continued to work on his books

and records in order to keep them up to date.

"26. If the Plaintiffs are entitled to deduct meals and lodging expenses while away from Hot Springs, then their income tax returns correctly reflect the amount of said expense. If the Plaintiffs are not entitled to deduct meals and lodging expense while away from Hot Springs, then the amount of their deduction is correctly stated in the August 20, 1965, letter from the Internal Revenue Service.

"27. The Plaintiff is required to maintain and keep up-to-date certain records in order to perform his function as a steward. These records and equipment consist of one rollidex file weighing 35 pounds, one Acme Visual file weighing 10 pounds, three brief cases weighing 50 pounds and one typewriter weighing 20 pounds.

"28. The Plaintiff takes home his records and equipment to work on them approximately every other night while he is working. He normally will have a place at the race track to keep the equipment but he does not know who else might have a key and access to that place. Plaintiff is not required to take his records and equipment home in the evening and could work on them at the race track after it is closed for the day.

"29. It is a courtesy among racing stewards to provide others of similar callings with information regarding persons who are trying to be licensed to work on a race track. Plaintiff receives calls in the evening on this phase of his work at home, to which inquiries he would make immediate answers if he had the records at hand, or return said calls on the next day if he had left the records at the race track itself. He also makes calls from home to other stewards when checking his records to make certain that they are up-to-date with respect to various individuals."

The pertinent data concerning the taxpayer's employment during the years in question are set forth in the "Reply to Request for Admission of Facts," and are as follows:

"During the calendar year 1960, Theodore L. Pierce was employed by the following race tracks for the periods of time indicated and received compensation as shown:

| Year 1960 | From | To | No. of Days | Salary |
|---|---|---|---|---|
| Tropical Park, Inc. Miami, Florida | 1-1-60 | 1-17-60 | 17 | $ 1,740.00 |
| Tropical Park, Inc. Miami, Florida | 11-10-60 | 12-31-60 | 52 | |
| Oaklawn Park, Hot Springs, Ark. | 2-20-60 | 3-26-60 | 34 | 2,657.50 |
| Beulah Park Jockey Club, Inc., Columbus, Ohio | 4-3-60 | 5-16-60 | 44 | 3,000.00 |
| Thistledown Racing Club, Inc., Cleveland, Ohio | 5-17-60 | 7-14-60 | 58 | 4,600.00 |
| Cincinnati Turf Club, Inc., Cincinnati, Ohio | 7-15-60 | 9-5-60 | 53 | 4,300.00 |
| Cranwood Racing Club, Inc. | 9-6-60 | 10-29-60 | 54 | 4,500.00 |
| Total | | | 312 | $20,797.50 |

"During the calendar year 1961, Theodore L. Pierce was employed by the following race tracks for the periods of time indicated and received compensation as shown:

| Year 1961 | From | To | No. of Days | Salary |
|---|---|---|---|---|
| Tropical Park, Inc. Miami, Florida | 1–1–61 | 1–12–61 | 12 | $ 480.00 |
| Oaklawn Jockey Club, Hot Springs, Ark. | 2–18–61 | 4–8–61 | 49 | 3,690.00 |
| Randall Racing Club, Cleveland, Ohio | 5–24–61 | 7–13–61 | 51 | 6,000.00 |
| Thistledown Racing Club, Inc., Cleveland, Ohio | 7–15–61 | 9–4–61 | 52 | 6,200.00 |
| Cranwood Racing Club, Inc. | 9–8–61 | 10–28–61 | 52 | 7,200.00 |
| Total | | | 216 | $23,570.00 |

"During the calendar year 1962, Theodore L. Pierce was employed by the following race tracks for the periods of time indicated and received compensation as shown:

| Year 1962 | From | To | No. of Days | Salary |
|---|---|---|---|---|
| Oaklawn Jockey Club, Hot Springs, Ark. | 2–17–62 | 4–7–62 | 50 | $ 3,690.00 |
| Randall Racing Club, Cleveland, Ohio | 4–26–62 | 8–13–62 | 78 | 6,700.00 |
| Thistledown Racing Club, Inc. Cleveland, Ohio | 7–14–62 | 9–6–62 | 55 | 7,000.00 |
| Cranwood Racing Club, Inc. | 9–7–62 | 11–21–62 | 59 | 7,992.88 |
| Total | | | 242 | $25,382.88" |

The following facts are established by the deposition of the taxpayer taken at the instance of the Government. In 1960 the taxpayer and his wife, who always accompanied him on his trips away from Hot Springs, stayed at the Commodore Hotel in Cleveland. They had a one-bedroom apartment which was rented on a month-to-month basis and paid for on a monthly rate. No lease was signed and no deposit was made. During that same year, while they were in Cincinnati, the taxpayer and his wife stayed at the Leesburg Gardens Apartments, where they had arrangements, both living and financial, similar to those in Cleveland. At the end of the Cincinnati meet, they returned to Cleveland for another meet.

In 1961 in Cleveland they stayed at an apartment house on Broadway and Bedford Streets, and also in an apartment on Shaker's Square. Again the arrangements were similar to those of 1960.

In 1962 in Cleveland they lived in an apartment on Shaker Boulevard for four or five months.

Because his bank account was in Hot Springs, the taxpayer had difficulty

cashing checks anywhere in Cleveland other than at the race track where he was employed. His wife never opened any charge accounts with Cleveland stores. Their mailing address was always at Hot Springs and the taxpayer had their mail forwarded to the various places of his employment.

From 1960 through 1964 the taxpayer spent more working days in Cleveland than any other city; in 1965 more days were spent in Detroit; in 1966 more were spent in Cincinnati; and the arrangements for 1967 call for more days to be spent in Cincinnati again. The taxpayer has not worked in Cleveland since 1964.

The Answers to Interrogatories and the deposition of the taxpayer establish that the transportation of the taxpayer's files (which weighed around 100 pounds) was not required of him; that a safe place to leave the files was provided at the track; and that he carried the files between the track and his place of lodging purely as a matter of personal convenience.

The relevant statute under which the taxpayer seeks recovery is § 162 of the Internal Revenue Code (26 U.S.C.A. § 162) which reads as follows:

"(a) In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

\* \* \*

"(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business;"

In Commissioner of Internal Revenue v. Flowers, (1946) 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203, it was held that the deductibility of travel expenses, under the aforementioned statute, is dependent on the following:

"(1) The expense must be a reasonable and necessary traveling expense, as that term is generally understood.

This includes such items as transportation fares and food and lodging expenses incurred while traveling.

"(2) The expense must be incurred 'while away from home.'

"(3) The expense must be incurred in pursuit of business. This means that there must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or of his employer. Moreover, such an expenditure must be necessary or appropriate to the development and pursuit of the business or trade."

It is not disputed that the deductions claimed were for reasonable and necessary food and lodging expenses. Nor does the Government contend that the expenses were made other than in the pursuit of business. The controversy here is whether or not the sums expended by the taxpayer in Cleveland during the years in question were expended while "away from home," or, during the period in question, "where was his home?"

It is the contention of the taxpayer that the term "home" should be construed by the court so as to be given its ordinary meaning as the term is understood by the general public. The Government contends that, for the purposes of the statute in question, "home" means the taxpayer's principal place of business, or where he spends the greatest portion of his working time during the year.

In support of their respective positions, the parties have cited numerous cases which appear to reach conflicting conclusions. However, every case cited by the parties which attempts to define "home" has been decided on the basis of the special facts involved in those cases, and are helpful here only to the extent that the facts upon which the decisions were reached are similar to the facts now before the court.

The Government maintains that the definition of the word "home" within the context of the statute has left the various Circuits in hopeless conflict, and that the Commissioner's construction (i. e., that

"home" means a taxpayer's principal place of business or employment, whether or not it coincides with his place of residence) has been accepted as the "rule" in some Circuits, including the Eighth Circuit, and rejected in others.[2] The court is of the opinion that our Circuit Court of Appeals has not laid down any abstract rule to be followed in all cases, and that if there is a conflict among the various Circuits, it is because, as stated above, each case must be decided on its own facts.

The most recent pronouncement by the Court of Appeals of the Eighth Circuit appears in Cockrell v. Commissioner of Internal Revenue, (1963) 321 F.2d 504, which, in view of the facts therein, does adopt the Commissioner's theory. There the petitioner had been an employee of McDonnell Aircraft Corporation in its engineering and test division. McDonnell was (and presumably still is) engaged in the research, development, and production of airplanes, missiles and spacecraft. "Through its engineering division it conducts research, designs, and produces prototype of craft and missiles at its plant in St. Louis. The engineering division is required to then test these articles at various Air Force bases, such as Holloman Air Force Base, Alamogordo, New Mexico." (P. 505.) McDonnell entered into a contract with the Government whereby it would develop certain aircraft and test them at Alamogordo. The testing was carried on from 1956 through 1960 with the Government paying travel expenses and per diem living allowance for the McDonnell employees who had to be relocated at Alamogordo. On May 25, 1956, the petitioner, who had been living in St. Louis, was assigned to Alamogordo where he worked "continuously" until November 28, 1960, except for a return trip to St. Louis in 1957 which lasted three days. The petitioner's family, his wife and child (another child was born there), lived with him at Alamogordo, first in motels, then in a two-bedroom house which was rented on a month-to-month basis, and finally in another house similarly rented. When he left St. Louis, petitioner knew on which projects he would be working and that the length of time it would take to complete the testing was "indefinite." On his return, the petitioner claimed deductions for his expenses incurred in 1957 and 1958. The claim was disallowed by the Commissioner, whose action was affirmed by the Tax Court (38 T.C. 470) and the Court of Appeals also affirmed. In holding against the taxpayer, the Appeals Court, at page 507 of 321 F.2d, stated:

"The issue in the case at bar turns upon a narrow question of fact and application of the three tests stated in Commissioner of Internal Revenue v. Flowers, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203 (1945). The exigencies of McDonnell's overall operation which petitioner argues necessitated his relocation at Holloman, standing alone, is of no significance to petitioner's right to claim personal 'living expense' as a tax deduction in the sense of 'traveling expense' while living at Alamogordo, New Mexico, close to Holloman. Section 162(a) (2), supra, refers to 'traveling expense' while 'away from home.' The word 'home' as used in that section is to be given its ordinary meaning. In a tax sense it is referable to the place where one has his principal

2. In support of this contention the Government places heavy reliance on a recent Supreme Court decision, Commissioner of Internal Revenue v. Stidger, (March 20, 1967) 386 U.S. 287, 87 S.Ct. 1065, 18 L.Ed.2d 53. That case contains dicta to the effect that the Eighth Circuit has adopted the conclusion urged by the Government. For the reasons hereinafter set forth, this court believes that no definite and positive construction of the term has been adopted either by the Eighth Circuit or the Supreme Court. Also, it should be noted that Stidger failed to resolve any "conflict" among the Circuits with respect to construing the term. The Tax Court decision in Stidger, it was said, was based primarily on the peculiar nature of the military and therefore "the Commissioner's position has a firmer foundation." (Page 232 of 386 U.S., page 1069 of 87 S.Ct.)

place of duty, and where he has an abode while pursuing such duty;—not where he merely claims his 'residence' to be. (Wright v. Hartsell, 305 F.2d 211 (9 Cir. 1962), and cases therein cited.)"

Dyer v. Bookwalter, (W.D.Mo.1964) 230 F.Supp. 521, was a case involving facts similar to the instant case in that there the taxpayer also worked at race tracks located away from his residence. Dyer, the taxpayer, lived in Carthage, Missouri, and worked as an outrider or exercising jockey for tracks in various cities throughout the country, none of which tracks were located in Carthage. On his 1960 return Dyer claimed deductions for travel expenses incurred while he was employed at East St. Louis, Illinois, and Collinsville, Illinois, including meals and lodging expenses. The deductions were disallowed by the District Director, and Dyer commenced action for refund. The court denied the claim citing the three requirements set forth in Flowers, supra. With respect to the second condition, that the expenses be incurred while "away from home," the court held, relying primarily on Cockrell, supra, that "legal domicil and 'home' for the purposes of Title 26, U.S.C.A. section 162(a) (2), are not synonymous" (p. 528), and that home for purposes of the section is *generally* to be construed as the taxpayer's primary place of business or employment.

The instant case is clearly distinguishable. As stated by the court in Dyer at page 528:

> "*This is not a case where a taxpayer has two or more places of employment and lives near one of them.* (Citations omitted.) *This is a case where a taxpayer has more than one regular place of employment and does not live near any one of them.*" (Emphasis added.)

The taxpayer relies heavily on Burns v. Gray, (6 Cir. 1961) 287 F.2d 698, which, because of its factual similarity to the instant case, is a very persuasive decision. There the taxpayer was also a race track employee who worked at tracks in various cities throughout the country. His residence for 25 years prior to the decision had been in Williamstown, Ky., where he lived with his wife and her parents in a house purchased 16 years before the decision. He also voted and paid taxes there. The taxpayer claimed deductions for sums expended while in Wheeling, W. Va., and the Director of Internal Revenue denied the claim. The Government contended that because more working days were spent in Wheeling, that was his "home" for the year. In allowing the deduction, the court at page 700 stated:

> "The government submits that in order to ascertain where Burns's 'home' was during the taxable year in question, one must consider all the different places of Burns's employment during that year, ascertain the place where he has been employed for the longest period during that time and then construe that place as his 'home' within the meaning of the statute. This is a strained and artificial construction; and we are not referred to anything that would indicate such was the intent of Congress."

In Burns, as in Dyer, supra, the taxpayer had no employment in the city of his residence. Also, the Government here contends that Burns, insofar as it refused to adopt the Commissioner's "rule," was rejected by the court in Dyer as being inconsistent with earlier Eighth Circuit decisions. If the court in Dyer did reject the Burns theory, it was because Burns was factually distinguishable. At page 529 the court in Dyer, referring to Burns, stated:

> "The Court in the Burns case further made the factual determination that the taxpayer did not deliberately select a place of employment at a place other than his home or, conversely, deliberately select a residence at a place other than where his regular place of employment was located. It is also noted that in the Burns case the taxpayer's legal domicile, Williamstown, Kentucky, was much less than 100 miles from both

Lexington and Louisville, Kentucky, *where the taxpayer repeatedly worked over a period of years."* (Emphasis added.)

The theory of the Burns decision was approved by the Tax Court when, in Sherman v. Commissioner, 16 T.C. 332, 337, the Court stated:

"This court has heretofore recognized that a taxayer may have more than one occupation or business, and has held that when it is shown that the taxpayer has two [or, presumably, more] occupations which require him to spend a *substantial* amount of time in each of two cities, he is entitled to the deduction of traveling and other ordinary and necessary business expenses incurred in connection with attendance upon the one removed from his residence." (Emphasis added.)

The distinctions thus noted place Burns much closer to the instant suit factually than to Dyer. As for any rejection of Burns as being inconsistent with prior Eighth Circuit decisions, the court in Dyer at page 529 stated:

"Apart from the factual distinctions, however, there are expressions in the Burns case which are not in accord with the result reached herein. If the Burns case were the only decision on the subject by a Court of Appeals, this Court would follow that case under the Rule of United States v. Eddy Bros., Inc. (C.A. 8) 291 F.2d 529, l. c. 531. However, the Burns case is not the only case in point, and it cannot be reconciled with some of the cases decided by the United States Court of Appeals for this Circuit. See, e. g., Commissioner v. Janss (C.A. 8) 260 F.2d 99."

In Commissioner of Internal Revenue v. Janss, (8 Cir. 1958) 260 F.2d 99, the court, however, did not adopt or reject any definition or construction of the term "home." There the decision turned on the third requirement set forth in Flowers, supra. The taxpayer, a student, claimed deductions for expenses incurred while employed for the summer in Alaska. The facts showed that men were generally available for work in Alaska. At pp. 103–104 the court stated:

"Clearly, the facts in the instant case require a finding that the *third* condition set forth by the Supreme Court in the Flowers case has not been met. True enough, an effort was made to show that the interests of the Green Construction Company and the requirements of its business were the motivating factors in the taxpayer's travel to Alaska. The Tax Court, however, made no finding to that effect and none could be justified by the record. * * * We do not find here that the exigencies of the business or the interests of the employer were the motivating forces in the taxpayer's travel from Des Moines, Iowa, to Alaska to work as a common laborer." (Emphasis added.)

█ It is readily apparent when the many cases on the subject have been considered that the term "home" *cannot* be given a hard and fast construction even for the purposes of this statute. In some cases (e. g., Cockrell and Dyer) home should be construed to mean the taxpayer's principal place of business. In others (e. g., Burns) home should be held to have its ordinary meaning. The point which cannot be overemphasized is that the correct construction to be applied depends, in every case, upon the unique facts involved.

All of the decisions cited above indicate that the taxpayer's deductions should be allowed for expenses incurred while in Cleveland, Ohio.

The cornerstone upon which rest the decisions disallowing deductions in cases under the applicable statute is that the taxpayer has voluntarily situated his residence and principal place of business at separate locations. When this occurs, a majority of courts (including the Eighth Circuit) hold that the taxpayer is not entitled to deduct expenses which, the courts feel, would not be incurred if the two locations were the same and which, according to the ordinary scheme of living, would be the same. Here this

thoroughly sound theory is inapplicable because he does not know, from year to year, at which city he will be employed the most days. It would be absurd to hold that by living away from that city, the taxpayer has voluntarily chosen to live away from his "tax home."

If the taxpayer were to put into practice the course of action advocated by the Government, and indicated by cases on other facts, the result would be totally unfair. It is true that his employment generally followed the same pattern for the years in question, but there was no way for him to definitely ascertain, prior to January, except for the one track in Florida, in which city he would be working the most days of that year. The Government observes the situation with a keen hindsight which, unfortunately, was not available to the taxpayer before the fact.

If the law were as the Government contends, the taxpayer would have to take one of the following courses of action:

1. Correctly guess where he would be spending most of his working days in the years to come and set up his residence there;

2. Refrain from accepting employment at any tracks other than in one city; or

3. Refuse to maintain a permanent "home" and live on a year-to-year basis in whichever city he determines, after contracting in January, he will be spending the greatest portion of his working days.

The court refuses to believe that Congress intended for one of the above alternatives to be followed in a situation such as this. The consequences of an incorrect guess in the first alternative are obvious. In the second, the taxpayer would lose valuable income for which he is willing and qualified to work. As for the third alternative, Congress has not the right nor would it consciously give consideration to forcing a person in the taxpayer's position to endure a nomadic existence, moving from year to year and never having the opportunity to establish even the semblance of a permanent "home."

It is altogether clear that the taxpayer has taken the only logical course in this situation. Since 1951 he has maintained a year-round residence at Hot Springs, Arkansas, where he has been employed yearly since 1935 except for the war years. He lived in an apartment on a yearly basis until 1960 when he purchased a house. He chose one city where he was reasonably certain he would be employed for a substantial period of each year and adopted that as his permanent home. He should not be penalized for so acting.

The court feels that the dissenting opinion in Purifoy v. Commissioner of Internal Revenue (1958) 358 U.S. 59, 79 S.Ct. 104, 3 L.Ed.2d 30, adequately expresses the most logical and prevailing view (the majority decision was reached without deciding the "home" issue). At page 62 of 358 U.S. at page 106 of 79 S. Ct., Mr. Justice Douglas stated:

"Such a construction [as urged by the Commissioner] means that the taxpayer who is forced to travel from place to place to pursue his trade must carry his home on his back regardless of the fact that he maintains his family at an abode which meets all accepted definitions of 'home.' I do not believe that Congress intended such a harsh result when it provided a deduction for traveling expenses."

It is clear from the facts that Hot Springs was the taxpayer's "home" as that term is understood in a general sense. His house was there, he paid taxes there, his bank account was there, and he always lived there except while *on the job* in other locations. Also, for 15 years he has spent, and in all probability will continue to spend, a *substantial* part of each *working* year in Hot Springs.

It is, therefore, the opinion of the court that while the taxpayer was working in Cleveland, he was "away from home" for tax purposes, and his deductions for meals and lodging expenses incurred there should be allowed.

With respect to the deductions claimed for sums expended in traveling between the taxpayer's place of lodging and the track, the court is of the opinion that the claim was properly denied. The evidence clearly indicates that the taxpayer was not required to transport anything other than his person to and from work, and it appears that this travel was nothing but commuting. If the petitioner lived in Cleveland permanently, he would certainly not be entitled to deduct this expense, and the court feels that his living there temporarily does not materially alter the situation, because, as stated above, this amounted to nothing more than personal transportation, and to allow such a deduction seems illogical.

The cases cited by the parties are not helpful, and the court has not been able to find any other cases on this precise point. In Mertens, Law of Federal Income Taxation, 1961–1965, Rulings, at page 492, appears Revenue Ruling 63–145, which reads as follows:

"A taxpayer may deduct, as a part of traveling expenses under section 162 (a) (2) of the Internal Revenue Code of 1954, his expenditures for laundry (or other cleaning and pressing of clothing) *and for transportation between his place of lodging and place of business at a temporary or minor post of duty, provided such expenditures are reasonable in amount and are incurred while traveling away from home in pursuit of his trade or business.*

"This modification of the prior rules is intended to relieve employees, employers, and self-employed individuals from the necessity of making numerous small adjustments in their own records and accounting systems in order to comply with the record keeping requirements for substantiating business travel expenses under section 274 (d) of the Code. Since this ruling is an administrative measure to aid businessmen seeking to comply with the new law, it is applicable for taxable years ending after December 31, 1962, *but only in respect of periods after that date,* and is to be limited strictly to the items and conditions specified herein.

"G.C.M. 7133, C.B. VIII–2, 85 (1929) (see last sentence in fifth paragraph on page 87), and Revenue Ruling 54–497, C.B. 1954–2, 75 (see first sentence in last paragraph on page 81), are hereby modified to the extent they would deny deductions for the laundry and transportation expenses which are allowed as traveling expense deductions in this ruling." (Emphasis added.)

It appears that this ruling would allow a taxpayer to deduct the travel expenses claimed here. But, the ruling explicitly limits its coverage to situations arising after December 31, 1962, and therefore does not apply to the instant suit.

It is the opinion of the court that the deduction claimed for food and lodging expenses incurred by the taxpayer while in Cleveland, Ohio, during the years 1961 and 1962 should be allowed, and that the travel expenses incurred while in Cleveland for transportation between the taxpayer's lodging and his place of employment for 1960 through 1962 should be disallowed.

The attorneys for the plaintiffs are hereby directed to prepare a precedent for judgment in accordance with this opinion pursuant to paragraph 31 of the stipulation,[3] and to submit same for approval as to form.

3. "31. The parties agree that in the event of a decision for the Plaintiffs, the Internal Revenue Service will compute the amount of recovery and upon agreement by the parties of the correct amount, an appropriate judgment will be submitted to the Court for entry."