Nat Glogowski, Sr. v. Commissioner.
Glogowski v. Commissioner
Docket No. 3001-65.
United States Tax Court
T.C. Memo 1967-236; 1967 Tax Ct. Memo LEXIS 24; 26 T.C.M. (CCH) 1202; T.C.M. (RIA) 67236; November 27, 1967
Clarence Steiner, for the petitioner. William L. McCulley, for the respondent. RAUM
Memorandum Findings of Fact and Opinion The Commissioner determined the following deficiencies in petitioner's income tax: Year
Amount
1961
$838.80
1962
596.11
1963
755.95 The case presents two issues: (1) Whether certain expenses for travel, meals, and lodging incurred by petitioner in the above years are deductible under section 162(a)(2), I.R.C. 1954, as "traveling expenses * * * while away from home in the pursuit of a trade or business"; (2) whether petitioner in 1961 and 1962 furnished over half the cost of maintaining a household so as to qualify for head of household status in those years. Findings of Fact The parties have stipulated certain facts and submitted certain exhibits, which are incorporated herein by reference. Petitioner, Nat Glogowski, Sr., was born in Florida in 1884, attended elementary school and college in Florida, is a registered voter in Florida, has always voted in Florida, *26 files his tax returns in Florida, and owns and operates an automobile purchased in Florida, which has borne only Florida license plates. He filed individual Federal income tax returns for the years 1961, 1962, and 1963 with the district director of internal revenue in Jacksonville, Florida, and resided in Coral Gables, Florida, at the time of filing his petition in this case. He purchased his Coral Gables home in 1949, and since then has resided there at all times, unless he is employed out of state. His disabled son, daughter-in-law, and grandson occupied this home with petitioner during the taxable years. Petitioner was employed as the Chief Auditor for the State of Florida Racing Commission for 20 years. Until 1959, he was employed almost entirely as an auditor in Florida at various race tracks. Since 1959, he has been unable, because of his age, to obtain any substantial employment at Florida race tracks. During the years 1961, 1962, and 1963, he was employed for only one day in 1963 by a Florida race track. The remainder of his employment for those years took place at race tracks outside Florida, namely, at the "Burrillville" and "Narragansett" tracks, both of which were in *27 the general area of Pawtucket, Rhode Island, and at the "Mid-State" track in Vernon, New York. He did not have any general contract of employment at any of these tracks, but was employed only for the duration of a specific meet. Such meets were fixed in duration and would last for a period of from about one to three months, depending upon the particular meet. In order to obtain employment for any particular meet petitioner was required to fill out a separate application for employment and would receive notice by mail as to whether his application had been accepted. Each application asked whether the applicant was a legal resident of the state in which the track was located. Each track gave preference in hiring to residents of the state in which it was located. On his applications, petitioner always stated that he was a resident of Florida. Petitioner was a member of a New York State union. The first meet in each of the taxable years was at the Burrillville track and began about mid-February. Petitioner would drive his automobile from Coral Gables to Pawtucket for that meet. It appears to have been his practice to return by auto to Coral Gables upon completion of that meet and then *28 to depart again from his Coral Gables residence a month or two later for the start of the next meet at which he had been accepted for employment. However, the record is not clear as to whether he thus returned to Coral Gables in 1962 after completion of the first Burrillville meet. In 1963 he returned by auto to Coral Gables, in addition, on two other occasions between meets. The final meet of each year was at the Narragansett track, and upon conclusion thereof in December, petitioner would drive his car back to Coral Gables. In 1963 he failed to obtain any employment at the Mid-State track. The following schedule sets forth petitioner's travel periods away from Coral Gables, and other data during the taxable years 1961-1963: 1961
Travel
Racing Dates
Place
From
To
From
To
Coral Gables (1-1 to 2-15)
Burrillville (to 4-16)
2-15 - Coral Gables
Pawtucket
2-18
4-16
Coral Gables (to 5-21)
4-16 - Pawtucket
Coral Gables
Mid-State (to 8-31)
5-21 - Coral Gables
Vernon
5-31
8-31
Burrillville (to 10-1)
8-31 - Vernon
Pawtucket
9- 2
10- 1
Narragansett (to 12-9)
10- 2
12- 9
Coral Gables (to 12-31)
12- 9 - Pawtucket
Coral Gables
1962
Coral Gables (1-1 to 2-8)
Burrillville (to 4-16)
2- 8 - Coral Gables
Pawtucket
2-14
4-11
Coral Gables (to ?) *
4-16 - Pawtucket
Coral Gables
Mid-State (to 9-1)
5-15 - Pawtucket *
Vernon
5-24
8-31
Burrillvilie (to 10-1)
9- 1 - Vernon
Pawtucket
9- 1
10- 1
Narragansett (to 12-8)
10- 1
12- 8
Coral Gables (to 12-31)
12- 8 - Pawtucket
Coral Gables
*29 1963
Travel
Place
From
To
Coral Gables (1-1 to 2-19)
Burrillville (to 4-28)
2-19 - Coral Gables
Pawtucket
Coral Gables (to 6-8)
4-28 - Pawtucket
Coral Gables
Narragansett (to 7-8)
6- 8 - Coral Gables
Pawtucket
Coral Gables (to 8-10)
7- 8 - Pawtucket
Coral Gables
Burrillville (to 9-22)
8-10 - Coral Gables
Pawtucket
Coral Gables (to 10-19)
9-22 - Pawtucket
Coral Gables
Narragansett (to 12-15)
10-19 - Coral Gables
Pawtucket
Coral Gables (to 12-31)
12-15 - Pawtucket
Coral Gables
Total wages received by petitioner for his work at the Burrillville, Narragansett, and Mid-State tracks during the years 1961-1963, as well as his wages for his one day's work in December 1963 at Tropical Park, Coral Gables, are shown in the following schedule: 1961
1962
1963
Burrillville
$2,982.00
$3,786.20
$3,515.40
Narragansett
2,616.60
2,614.50
3,020.75
Mid-State
3,239.00
2,232.50
Tropical Park
27.50
Totals
$8,837.60
$8,633.20
$6,563.65
*30 The parties have stipulated as to the mileage covered by the foregoing travel and have agreed that petitioner incurred automobile expenses in respect of that travel at the rate of 10 cents a mile in 1961 and 11 cents a mile in 1962 and 1963, or total automobile expenses as follows: Year
Amount
1961
$ 677.00
1962
420.20
1963
1,404.15
While working at the Burrillville and Narragansett tracks, petitioner rented various apartments in Pawtucket, and while working at the Mid-State track he rented various apartments in Vernon. While away from Coral Gables petitioner incurred expenses for meals and lodgings at the rate of $11 a day, in the following total amounts: Year
Amount
1961
$2,948.00
1962
3,036.00
1963
2,343.00
On his income tax returns for 1961, 1962, and 1963, petitioner deducted as business expenses under section 162(a) automobile, meals, and lodging expenses in the amounts indicated above for the respective years. In his statutory notice of deficiency, the Commissioner disallowed portions of these deductions in the following amounts: Deduction
Deduction
Year
Claimed
Disallowed
1961
$3,625.00
$2,571.50
1962
3,456.20
2,295.20
1963
3,747.15
3,747.15
*31 The disallowances were based on the Commissioner's determination that petitioner's "home" for the purpose of section 162(a) was Pawtucket, Rhode Island. On this basis only auto expenses representing travel between Pawtucket and Vernon and only meals and lodging while in Vernon were considered allowable deductions. Head of household issue, 1961 and 1962. During the taxable years, petitioner's disabled son, daughter-in-law, and grandson lived with him in Coral Gables in the house owned by petitioner which he had purchased in 1949. It had an assessed value of $16,140. Petitioner's son received a pension of about $300 per month, and he had partial employment in 1961 and 1962 when able to work. His earnings during these years are undisclosed. Petitioner made the following service payments for his Coral Gables home for the periods indicated: Approximate
Service
Period
Amount
Telephone
1/63 - 11/63
$101.21
Garbage & trash
disposal
10/1/61 - 9/30/62
33.00
4/1/63 - 9/30/63
16.50
Electricity
1/63 - 11/63
280.37
Water
1/63 - 11/63
26.40 These payments are representative of payments made by petitioner for such services for corresponding periods from *32 1961 through 1963. In 1962, petitioner paid $61.20 for repairs to an air conditioner. Petitioner has received offers to rent rooms in his house for $25 to $35 per week per room. He could probably rent the house for $2,500 per year. Petitioner's son paid him nothing for living in the house. Petitioner gave his son various sums of money in 1961 and 1962, but petitioner did not remember the amounts. Either at the end of 1961 or beginning of 1962, petitioner gave his son a Cadillac automobile for which petitioner had paid $2,250. Prior to his son's coming to live with him, petitioner, in 1960, for reasons of his son's health, made certain modifications in his house, including the installation of an air conditioner and heating apparatus at a cost of $1,000, of a new roof at a cost of $700 and of new carpeting at a cost of $467.13. None of these amounts were repaid to petitioner by his son. While petitioner was away from Coral Gables, his son paid the food bills and paid the gardening bill of $10 every two weeks. On his 1961 income tax return, petitioner deducted $221.02 for real estate taxes. The record does not disclose the total amount expended to support petitioner's household in *33 the years 1961 and 1962. In his tax returns for 1961 and 1962, petitioner computed his tax liability at the rates applicable to heads of household under section 1(b), I.R.C. 1954. The Commissioner in his notice of deficiency determined that petitioner did not qualify as a head of household and recomputed his tax liability at the rates applicable to single individuals. In his tax return for 1963, petitioner computed his tax liability at the rates applicable to single individuals. However, in determining the deficiency for 1963, the Commissioner used the head of household rates, and no head of household issue is presented as to that year. Opinion RAUM, Judge: 1. Traveling expenses. Section 162(a) of the 1954 Code provides for a deduction of ordinary and necessary business expenses which are defined to include (2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; * * * The amounts of petitioner's expenses for travel, meals and lodging during the taxable years are not in dispute. The sole issue is whether he satisfied the requirement that such expenses were incurred *34 "while away from home". Petitioner argues that his "home" was his residence in Coral Gables, whereas the Commissioner contends that Pawtucket, Rhode Island, must be regarded as his home, and that he is to be allowed deductions only to the extent that his travel carried him from Pawtucket to Vernon, New York. We hold that petitioner's "home" was in Coral Gables. The Government relies upon the familiar concept that the word "home" in section 162 means the taxpayer's regular or principal place of business, or his "tax home", rather than the place where he actually resides. Raymond E. Kershner, 14 T.C. 168, 174; Walter M. Priddy, 43 B.T.A. 18, 31, acq. 1941 C.B. 7; George W. Lindsay, 34 B.T.A. 840, 843; Mort L. Bixler, 5 B.T.A. 1181, 1184. See Commissioner v. Stidger, 386 U.S. 287, 290. And in fixing upon Pawtucket as petitioner's home, it argues further that "when an employee has two or more recurring seasonal places of employment, his home for tax purposes is his principal post of duty, and his principal post of duty is the place where such an employee carries on most of his activity, spends most of his *35 time and earns most of his income, irrespective of where he may maintain a family residence." But the "tax home" concept upon which the Government relies has definite limitations. Thus, if the taxpayer's presence at the place where he renders his services is merely "temporary" as opposed to "indefinite", or "permanent", that place will not be regarded as his home or tax home. Harvey v. Commissioner, 283 F. 2d 491, 495 (C.A. 9); Coburn v. Commissioner, 138 F. 2d 763, 764 (C.A. 2); Lawrence P. Dowd, 37 T.C. 399, 409; E. G. Leach, 12 T.C. 20, 21; Harry F. Schurer, 3 T.C. 544, 547, acq. 1944 C.B. 24. We do not agree with the Commissioner's treatment of this case as one involving two or more recurring seasonal places of employment. Rather, we think that the record supports petitioner's contention that his employment at each of the tracks was merely "temporary". He was employed on each occasion for only fixed periods, never more than several months at a time. He was required to file a separate application for employment at each meet, some of which were only about a month in duration, and the longest of which *36 only about three months. There does not appear to have been any assurance of continuity of employment over any indefinite or extended period. Indeed, in view of petitioner's age and actual nonresidence, the likelihood of continuous or recurring employment would not seem to rest on any firm foundation. Moreover, because of petitioner's age and the temporary character of each employment, it was highly unreasonable to expect him to move his permanent residence from Coral Gables to Pawtucket. Yet, it has been indicated that whether it is reasonable to expect a taxpayer to move his permanent place of abode to his place of work is an important consideration in disposing of issues like the one before us. Harvey v. Commissioner, supra, 283 F. 2d at p. 495. Cf. Pierce v. United States, 271 F. Supp. 165, 174 (W. D. Ark.). In concluding that petitioner is entitled to the contested deductions, we note that the result we reach is in accord with a number of cases involving race track employees. Burns v. Gray, 287 F. 2d 698 (C.A. 6); Pierce v. United States, 271 F. Supp. 165 (W. D. Ark.); Alois Joseph Weidekamp, 29 T.C. 16, acq. *37 1958-1 C.B. 6; Charles J. McLennan, 4 T.C.M. 672; Est. of Robert S. Shelley, 4 T.C.M. 668; Mortimer M. Mahony, 4 T.C.M. 395. Cf. Charles J. Hundt, 20 T.C.M. 368 (1961-81); Patricia A. Ruby Hall, 23 T.C.M. 930; Judy L. Gooderham, 23 T.C.M. 938. But cf. Dyer v. Bookwalter, 230 F. Supp. 521 (W.D. Mo.). We hold that petitioner's employment were "temporary" rather than "indefinite", and that he was "away from home" when so engaged. 2. Head of household issue. The next issue is whether petitioner qualified for head of household status for the years 1961 and 1962. [1] The only dispute here is whether petitioner furnished over half the cost of maintaining his household during the years involved. There is no argument that petitioner did not meet all the other requirements of a head of household. *38 During 1961 and 1962, petitioner maintained a residence in Coral Gables, Florida, where he lived, when not employed out of state, with his disabled son and his son's wife and son. He introduced evidence as to payment of bills for telephone, trash collection, electricity and water. Also, the record indicates that he probably paid the real estate taxes on the property. He also testified that he paid the gardener's expenses ( $10 twice a month) when he was in Coral Gables, and there is some loose evidence from which we might conclude that he paid some of the food bills when he was in Coral Gables. However, the evidence also shows that petitioner's son had a pension of $300 a month, that he received earnings in unspecified amounts for part-time work, and that he paid the food bills, as well as gardener's expenses, when petitioner was away from Coral Gables. The difficulty with petitioner's position is that we cannot tell on the record before us whether he furnished more than one-half the cost of maintaining the household. And we note in this connection that certain items which petitioner would have us include as supplied by him may not properly be taken into account. Thus, his gift *39 of an automobile to his son in 1961 or 1962 is not part of the cost of maintaining the household. See Regulations section 1.1-2. [2] Nor is the rental value of the house includible for that purpose. Donald G. Teeling, 42 T.C. 671, acq. 1965-2 C.B. 6. And to the extent that his extensive repairs or additions might otherwise be taken into account, they fail to qualify here because they were made in 1960 rather than 1961 or 1962. *40 We must decide this issue against petitioner for failure of proof, although we note that the Commissioner has computed petitioner's taxes for 1963, using the head of household rates. Perhaps, he gave weight to the fact that petitioner spent considerably more time in Coral Gables in 1963 than in the two previous years and thus contributed more to the maintenance of the home in that year. In any event, we can find no escape from ruling against petitioner on this issue as to 1961 and 1962 on the present state of the record. Decision will be entered under Rule 50. Footnotes
*. The record is confusing and contradictory as to these items. Although it is stipulated that petitioner traveled from Pawtucket to Coral Gables, it is also stipulated that he left for Vernon from Pawtucket. Other materials in the record more convincingly show that he remained in Coral Gables until 5-15 and left on that day from Coral Gables for Vernon.↩
1. SEC. 1. TAX IMPOSED. * * *
(b) Rates of Tax on Heads of Households. - * * *
(2) Definition of Head of Household. - For purposes of this subtitle, an individual shall be considered a head of a household if, and only if, such individual is not married at the close of his taxable year, is not a surviving spouse (as defined in section 2(b)), and either - (A) maintains as his home a household which constitutes for such taxable year the principal place of abode, as a member of such household, of - (i) a son, stepson, daughter, or stepdaughter of the taxpayer, or a descendant of a son or daughter of the taxpayer, but if such son, stepson, daughter, stepdaughter, or descendant is married at the close of the taxpayer's taxable year, only if the taxpayer is entitled to a deduction for the taxable year for such person under section 151, or (ii) any other person who is a dependent of the taxpayer, if the taxpayer is entitled to a deduction for the taxable year for such person under section 151, or (b) maintains a household which constitutes for such taxable year the principal place of abode of the father or mother of the taxpayer, if the taxpayer is entitled to a deduction for the taxable year for such father or mother under section 151. For purposes of this paragraph and of section 2(b)(1)(B), an individual shall be considered as maintaining a household only if over half of the cost of maintaining the household during the taxable year is furnished by such individual.↩
2. Regs. section 1.1-2. Rates of tax on heads of households. * * *
(d) Cost of maintaining a household. The taxpayer shall be considered as maintaining a household only if he pays more than one-half the cost thereof for his taxable year. The cost of maintaining a household shall be the expenses incurred for the mutual benefit of the occupants thereof by reason of its operation as the principal place of abode of such occupants for such taxable year. The cost of maintaining a household shall not include expenses otherwise incurred. The expenses of maintaining a household include property taxes, mortgage interest, rent, utility charges, upkeep and repairs, property insurance, and food consumed on the premises. Such expenses do not include the cost of clothing, education, medical treatment, vacations, life insurance, and transportation. In addition, the cost of maintaining a household shall not include any amount which represents the value of services rendered in the household by the taxpayer or by a person qualifying the taxpayer as a head of a household.↩