Chester W. LaPoint v. Commissioner.
La Point v. Commissioner
Docket No. 6471-66.
United States Tax Court
T.C. Memo 1968-76; 1968 Tax Ct. Memo LEXIS 222; 27 T.C.M. (CCH) 380; T.C.M. (RIA) 68076; April 29, 1968. Filed Scott B. Lukins, 725 Lincoln Bldg., Spokane, Wash., for the petitioner. Gary C. Randall, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent determined a deficiency of $543.61 in petitioner's income tax for the taxable year 1963. [1]
Because of pretrial concessions of the parties, a Rule 50 computation will be necessary. The only issue for decision is whether petitioner's "home" for the purposes of section 162(a) (2) [2] was in Spokane, Washington, or in Portland, Oregon, during 1963. *223 Findings of Fact Some of the facts were stipulated. The stipulation of facts, together with the exhibit attached thereto, is incorporated herein by this reference. Petitioner is a calendar year cash basis taxpayer. He filed his Federal individual income tax return for the taxable year 1963 with the district director of internal revenue, Tacoma, Washington. Petitioner's legal residence was in Spokane, Washington, when he filed the petition in this case. Petitioner was born and raised in Spokane, Washington. Since at least 1939, he and his mother have lived at 624 East Wabash, Spokane. [3] During his residency in Spokane, petitioner has belonged to the Lidgerwood Presbyterian Church and to the Spokane Elks Lodge. Petitioner's friends and social acquaintances are located primarily in Spokane. Since 1940, he has been registered to vote and has voted only in Spokane. Since 1939, petitioner has maintained a checking account at the Old National Bank in Spokane. He has not maintained a checking or savings account in any city other than Spokane. Petitioner has, since 1939, filed his Federal income tax *224 returns with the district director of internal revenue, Tacoma, Washington. Petitioner has been employed since 1939 by the Spokane, Portland and Seattle Railway Company (hereinafter referred to as Railway Company or the company). Petitioner's job classification is that of a "promoted conductor holding a job as a regular brakeman." He serves as an extra conductor when there is a vacancy, but he usually serves as a brakeman. Railway Company owns and operates railway facilities in Washington and Oregon. Its principal rail line runs between Portland, Oregon, and Spokane, Washington. In 1963, the main office of the company was in Portland. The company also maintained an office in Spokane in 1963. Railway Company is owned, in equal portions, by the Great Northern Railway Company and the Northern Pacific Railway Company. Both of these companies operate trains over the tracks owned by Railway Company. Petitioner's work assignments are governed by a seniority system applicable to the employees of Railway Company. On or about March 1 of each year, all conductor and brakeman jobs are listed by the company. Each qualified employee has an opportunity to hold any conductor or brakeman job *225 listed, subject only to the preferences of employees with more seniority. Petitioner selects his particular job assignments after taking into account such factors 381 as the rate of pay, the number and regularity of train runs, and the locations of the terminals on the runs. He does not take into account the factor of expenses for items such as food and lodging while away from home, because these expenses are a common factor with all job assignments available. Prior to October 9, 1961, petitioner worked on a train which began its run in Spokane and traveled to Pasco, Washington. During this time petitioner maintained his principal residence in Spokane and maintained an apartment in Pasco. Due to the irregular schedule of railroad service to and from Pasco, the first-in-first-out system applicable to train crews, and the need for "work" and "switch" trains in and about the Pasco terminal, petitioner was usually away from Spokane for periods in excess of one day. For taxable years prior to and including 1961, petitioner deducted the expenses he incurred in Pasco on his Federal income tax returns. In October 1961, petitioner lost his brakeman job on the Spokane-Pasco train to *226 an employee with more seniority. Petitioner thereupon took the job of brakeman on train # 2 between Portland and Spokane and train # 1 between Spokane and Portland. Petitioner has held this job assignment since 1961. The trains to which petitioner was assigned in 1961 contain passenger cars of Railway Company, the Great Northern Railway Company, and the Northern Pacific Railway Company. Train # 2 originates in Portland, leaving that city at 3:00 P.M. and arriving at Spokane at 9:50 P.M. the same day. At Spokane, the train proceeds to Minneapolis, Minnesota, on the Great Northern Railway lines. The train crew to which petitioner is assigned lays over in Spokane for approximately 26 hours until a return run out of Minneapolis leaves Spokane as train # 1 for Portland at 11:30 P.M. That run reaches Portland at 7:00 A.M. the following morning. The crew then lays over in Portland for 55 hours before starting the cycle again. Over a 96-hour, or 4-day, cycle petitioner is normally in the following locations: Approx. Hours
On the road
15
At Spokane
26
At Portland 55
Total
96
In 1963, the year in issue in this case, petitioner made 89 round trips between Portland *227 and Spokane. The crew members of the Portland-Spokane train are required to be off duty for an 8-hour rest period immediately after a run between the two cities. After this 8-hour period, the members are subject to call for extra duty. Unless called for extra duty, however, the crew members are off duty in both cities until the next regularly scheduled run. The Portland-Spokane run covers approximately 380 rail miles. Plymouth, Washington, is 192 miles from Portland and is considered to be the mid-point on the Portland-Spokane run. The run between Portland and Plymouth normally takes 3 hours and 19 minutes and the run between Plymouth and Spokane normally takes 3 hours and 31 minutes. The westward run between Spokane and Plymouth normally takes 3 hours and 52 minutes and the run between Plymouth and Portland normally takes 3 hours and 38 minutes. Petitioner normally spends more of his working time on the Spokane-Plymounth run than he does on the Plymouth-Portland run. Petitioner was, however, paid by the mile, rather than on an hourly basis, in 1963. Railway Company considers Portland to be the home terminal of the Portland-Spokane train. Petitioner takes the same view, considering *228 the run from Spokane to Portland to be the return trip. Petitioner is not, however, required to remain in Portland while he is off duty. He may go where he pleases during his time off, but he must always report for duty at Portland where his work assignments originate. He cannot report for duty at Spokane, even if he is finishing a vacation on a day when his train makes a return trip from Spokane to Portland. During 1963, copies of petitioner's run reports were required to be mailed to the local trainmaster in Spokane, the Chief Dispatcher of Railway Company in Portland, and the Assistant Superintendent of Railway Company in Portland. Accident reports were also required to be mailed to these three persons. Lockers were provided for employees at each end of the Portland-Spokane run. The Union of which petitioner is a member maintained its head office in Portland in 1963. That office would have been the proper location for filing a grievance relating to the Portland-Spokane run. 382 Since 1939, petitioner has received his pay checks at the Spokane terminal of Railway Company. The company will deliver pay checks to any terminal requested by an employee. Petitioner did not request *229 a change in the place of delivery of his pay checks when he changed his job assignment in October 1961. When petitioner changed his job assignment in 1961, he purchased a house trailer for dwelling purposes during his layovers in Portland. Petitioner used the trailer for such purposes during 1963. During 1963, petitioner spent $1,626.54 for meals and lodging in Portland. In the same year, he spent $475 for meals and lodging in Spokane. Railway Company did not reimburse him for any of these expenses. In his Federal income tax return for 1963, petitioner deducted $1,626.54 as travel expenses under section 162(a)(2). He did so on the theory that Spokane was his "home" for the purposes of section 162(a)(2). In his statutory notice of deficiency for 1963, respondent disallowed petitioner's travel expense deduction, except for $475. He did so on the ground that Portland was petitioner's "home" for the purposes of section 162(a)(2). Opinion The issue for decision is whether petitioner's "home" for the purposes of section 162(a)(2) was in Spokane or in Portland during 1963. Both parties recognize the long-standing rule that when a person's employment requires him to spend substantial *230 amounts of time in each of two cities, his "home" for the purposes of section 162(a)(2) is in the city which is his "principal post of duty." Walter F. Brown, 13 B.T.A. 832 (1928); S.M.R. O'Hara, 6 T.C. 841 (1946). The question in controversy is whether Spokane or Portland was petitioner's principal post of duty during 1963. Railway Company regarded Portland as the home terminal on petitioner's run. Petitioner likewise regarded Portland as the home terminal. Petitioner spent two days in Portland for every one he spent in Spokane. When petitioner terminated a vacation, he had to report for work at Portland. Petitioner's work assignments originated in Portland. Under all the circumstances of the case, we conclude that Portland was petitioner's principal post of duty in 1963. Cf. S. M. R. O'Hara, supra. This case is not like Joseph H. Sherman, Jr., 16 T.C. 332 (1951), [4] acq. 1951-2 C.B. 4. The taxpayer in Sherman spent the major portion of his time in the city where his "family roots" were, a circumstance which is not present in the case at bar. Furthermore, the taxpayer in Sherman had two occupations, while petitioner has one. *231 Nor is this case like Pierce v. United States, 271 F. Supp. 165 (W.D. Ark. 1967). The taxpayer in Pierce, unlike petitioner in the case at bar, had no advance knowledge of where he would spend the major portion of his time in a given year. As the following quotation from the opinion in Pierce shows, this fact was vitally important to the result in that case: The cornerstone upon which rest the decisions disallowing deductions in cases under the applicable statute [section 162(a)(2)] is that the taxpayer has voluntarily situated his residence and principal place of business at separate locations. When this occurs, a majority of courts * * * hold that the taxpayer is not entitled to deduct expenses which, the courts feel, would not be incurred if the two locations were the same and which, according to the ordinary scheme of living, would be the same. Here this thoroughly sound theory is inapplicable because he [the taxpayer] does not know, from year to year, at which city *232 he will be employed the most days. It would be absurd to hold that by living away from that city, the taxpayer has voluntarily chosen to live away from his "tax home." Moreover, the taxpayer in Pierce proved that his sojourn in cities other than that of his original residence was temporary, not indefinite or indeterminate. As we point out below, petitioner has not proved the same fact in the present case. Furthermore, it is not material in the present case to question whether petitioner had a business purpose for maintaining a residence in Spokane. As we construe petitioner's brief, he argues that such business purpose by itself would support a holding that Spokane was his "home" for the purposes of section 162(a)(2) in 1963. We do not, however, agree with the argument. In 383 Commissioner v. Flowers, 326 U.S. 465, at 470 (1946), the Supreme Court set out the following tests to govern the allowability of deductions under what is now section 162(a)(2): Three conditions must thus be satisfied before a traveling expense deduction may be made under § 23(a)(1)(A): (1) The expense must be a reasonable and necessary traveling expense, as that term is generally understood. *233 This includes such items as transportation fares and food and lodging expenses incurred while traveling. (2) The expense must be incurred while away from home." (3) The expense must be incurred in pursuit of business. This means that there must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or of his employer. Moreover, such an expenditure must be necessary or appropriate to the development and pursuit of the business or trade. We think petitioner, in his business-purpose argument, is blending together the second and third conditions set out in Flowers. The business purpose of which petitioner speaks could at most satisfy the third condition. It could not, at least under the circumstances of the present case, satisfy the second condition, which is the area of controversy herein. Finally, this is not a case in which a taxpayer's principal post of duty is temporary rather than indefinite or indeterminate. Petitioner hints in his reply brief that he felt his 1961 job assignment to be temporary. Because petitioner raised this argument for the first time in his reply brief, we hesitate to deal with it. Aside from this, *234 however, petitioner has not proved to our satisfaction that his 1961 job assignment was temporary. Indeed, the record as a whole tends to support an inference to the contrary. See S.M.R. O'Hara, supra, at 845. We hold that Portland was petitioner's "home" for the purposes of section 162(a)(2) during 1963. Decision will be entered under Rule 50. Footnotes
1. Petitioner asserts an overpayment of $301.23 in his income tax for the same taxable year.↩
2. All statutory references are to the Internal Revenue Code of 1954, unless otherwise indicated.↩
3. Petitioner was not married during 1963, the year in issue in this case.↩
4. In addition to the cases cited herein. pertitioner relies on various Memorandum Opinions of this Court. We have read these opinions and think they are distinguishable from the case at bar.↩