Joe R. DYER, Plaintiff,

v.

E. O. BOOKWALTER, District Director of Internal Revenue, Defendant.

Civ. A. No. 1741.

United States District Court
W. D. Missouri,
Southwestern Division.

May 25, 1964.

Myers & Birk, by Wm. C. Myers, Jr., Webb City, Mo., for plaintiff.

F. Russell, Millin, U. S. Atty., by Joseph P. Teasdale, Asst. U. S. Atty., Kansas City, Mo., Louis F. Oberdorfer, Asst. Atty. Gen., Dept. of Justice, by Robert W. Ryan, Jr., Tax Division, Washington, D. C., for defendant.

BECKER, District Judge.

This is a suit by Joe R. Dyer, plaintiff, for refund of income taxes in the amount of $312.00 paid for the year 1960, plus interest as provided by law.

The factual case was submitted by agreement upon a partial stipulation of facts, and upon the plaintiff's answers to defendant's interrogatories.

The facts as stipulated by the parties are as follows:

"1. On or about February 25, 1961, Plaintiff filed his Federal Income tax return for the calendar year 1960 with the District Director of Internal Revenue at Kansas City, Missouri. The return disclosed a refund due the Plaintiff of $469.73. Attached hereto as Exhibit 'A' is a copy of the 1960 U. S. Individual Income Tax Return of Joe R. Dyer, Plaintiff. [Standard deductions were claimed in the return pursuant to Sections 141–44, IRC 1954.]

"2. In October 1961, and after examination, the District Director of Internal Revenue refunded $180.-27 tax and interest, and disallowed the balance of the refund claimed.

"3. On November 20, 1961, Plaintiff filed a claim for refund of $312 and on May 15, 1962, said claim for refund was disallowed by the Defendant, District Director of Internal Revenue.

"4. Dyer worked at Cahokia Downs in East St. Louis, Illinois, at Hot Springs, Arkansas, and at Col-

linsville, Illinois during the racing seasons of 1954 and 1955.

"5. Dyer worked at Fairmount Track in Collinsville, Illinois and at tracks in California, Kentucky and New Jersey, Ohio, Nebraska and Canada during the racing seasons of 1950, 1951, 1952, 1953, 1954 and 1955.

"6. Dyer worked during the following year at the following tracks and received wages as indicated:

### a. 1956

| | | |
|---|---|---|
| Oaklawn Jockey Club | Hot Springs, Ark. | $ 465.00 |
| East St. Louis Jockey Club, Inc. | East St. Louis, Ill. | 1,200.00 |
| Fairmount Park Jockey Club, Inc. | Collinsville, Ill. | 1,255.00 |
| K. D. Kepler | Hot Springs, Ark. and New Orleans, La. | 1,450.00 |
| | Total | $4,370.00 |

### b. 1957

| | | |
|---|---|---|
| Oaklawn Jockey Club | Hot Springs, Ark. | $ 465.00 |
| East St. Louis Jockey Club, Inc. | East St. Louis, Ill. | 1,500.00 |
| Fairmount Park Jockey Club, Inc. | Collinsville, Ill. | 1,500.00 |
| K. D. Kepler | Hot Springs, Ark. and New Orleans, La. | 1,161.00 |
| | Total | $4,626.00 |

### c. 1958

| | | |
|---|---|---|
| K. D. Kepler | Various Racing tracks including New Orleans, La. for 2½ months | $1,050.00 |
| Fairmount Park Jockey Club, Inc. | Collinsville, Ill. | 1,500.00 |
| East St. Louis Jockey Club, Inc. | East St. Louis, Ill. | 1,525.00 |
| Oaklawn Jockey Club | Hot Springs, Arkansas | 465.00 |
| | Total | $4,540.00 |

### d. 1959

| | | |
|---|---|---|
| Fairmount Park Jockey Club, Inc. | Collinsville, Ill. | $2,360.00 |
| East St. Louis Jockey Club, Inc. | East St. Louis, Ill. | 1,500.00 |
| Oaklawn Jockey Club | Hot Springs, Ark. | 465.00 |
| Reynolds Cattle Company | Various Race Tracks including New Orleans, La. for 1½ months and tracks in Ohio and Kentucky | 627.88 |
| | Total | $4,952.88 |

e. 1960

| | | |
|---|---|---|
| Reynolds Cattle Co. | Various Tracks | $ 739.00 |
| Oaklawn Jockey Club | Hot Springs, Ark. | 502.50 |
| East St. Louis Jockey Club, Inc. | East St. Louis, Ill. | 1,500.00 |
| Fairmount Park Jockey Club, Inc. | Collinsville, Ill. | 2,320.00 |
| | Total | $5,061.50 |

f. 1961

| | | |
|---|---|---|
| Reynolds Cattle Co. | Various Race Tracks | $ 680.00 |
| Oaklawn Jockey Club | Hot Springs, Ark. | 645.00 |
| East St. Louis Jockey Club, Inc. | East St. Louis, Ill. | 2,413.00 |
| Fairmount Park Jockey Club, Inc. | Collinsville, Ill. | 2,330.00 |
| | Total | $6,068.00 |

"7. During 1960 Dyer worked at the following tracks during the periods indicated and worked as an Out-rider and Exercising Jockey the number of days indicated.

| | | |
|---|---|---|
| Oaklawn Jockey Club | Hot Springs, Ark. | Jan. 1 to March 29th (worked 43 racing days) |
| Reynolds Cattle Co. | Various race tracks including Ohio and Kentucky | Jan. 1st to March 29th |
| East St. Louis Jockey Club, Inc. | East St. Louis, Ill. | April 22d to July 22d (worked 60 racing days) |
| Fairmount Park Jockey Club, Inc. | Collinsville, Ill. | July 22d to October 14th (worked 60 racing days) |

"8. Dyer had no employment in 1960 other than his employment by the Oaklawn Jockey Club, the East St. Louis Jockey Club, Inc., the Fairmount Park Jockey Club, Inc., and Reynolds Cattle Co.

"9. Betting on horse races is [and was] illegal in Missouri, but horse racing is not.

"10. During 1960 Dyer's family visited him at Hot Springs, Arkansas for four days, East St. Louis, Illinois for four days, and Collinsville, Illinois for five days. During other times in 1960 Dyer's family was in Carthage, Missouri. During 1960 while working at Hot Springs, Arkansas, Dyer did not visit his family in Carthage, Missouri; while working in East St. Louis, Illinois Dyer visited his family one weekend at Carthage, Missouri; while work-

ing at Collinsville, Illinois, Dyer visited his family in Carthage, Missouri one weekend.

"11. For the past 15½ years Dyer lived in Carthage, Missouri except for the periods when he was employed at the various tracks where he worked. During 1960 he lived in Carthage, Missouri from March 30, 1960 to April 21, 1960 and from October 15, 1960 to December 31, 1960.

"12. Dyer's trade or business is an Outrider or Exercising Jockey. Dyer was born in Pittsburg, Kansas. Pittsburg, Kansas is 40 miles from Carthage, Missouri. For approximately 37 years Dyer has been employed as a Jockey, Outrider and Exercising Jockey at various race tracks, throughout the country. Dyer married a Carthage, Missouri girl and Dyer and his wife have, for the past 15½ years, owned and maintained a house in Carthage, Missouri. Dyer is registered as a voter in Carthage, Missouri. Dyer paid real estate taxes in Carthage, Missouri. Dyer maintains his bank account in Carthage, Missouri. Dyer licenses his automobile in the State of Missouri. Dyer files his Federal Income Tax Returns with the District Director of Internal Revenue in Kansas City, Missouri, the office which citizens and residents of Carthage, Missouri are required to file them. Dyer's Federal Income Tax Returns show his home address as 722 Sycamore Street, Carthage, Missouri.

"13. Hot Springs, Arkansas is approximately 300 miles south of Carthage, Missouri; East St. Louis, Illinois is approximately 320 miles northeast of Carthage, Missouri; Collinsville, Illinois is approximately 320 miles northeast of Carthage, Missouri; Hot Springs, Arkansas is approximately 465 miles southwest of East St. Louis, Illinois; East St. Louis, Illinois is approximately 9 miles from Collinsville, Illinois.

"14. During 1960, Dyer stayed at 101 Highland Place, Collinsville, Illinois while working in East St. Louis and Collinsville, Illinois.

"15. Attached as Exhibit 'B'[1] is a contract between Dyer and East St. Louis Jockey Club, Inc., for the year 1961. This contract is similar to the contract executed between Dyer and the East St. Louis Jockey Club, Inc., for the 1960 season. Mr. Roy Benningsen, Executive Director of the Fairmount track states that he (Benningsen) usually contacts Dyer at the East St. Louis Jockey Club, Inc., while Dyer is working there and offers him the job of Outrider at the Fairmount track. Dyer's contracts with the East St. Louis Jockey Club, Inc., and the Fairmount track in Collinsville, Illinois were each for the duration of one season.

"16. The reasonableness[2] of the amounts claimed by Dyer totaling

1. This informal contract in letter form is as follows:

"January 16, 1961.

"Mr. Joe Dyer
722 Sycamore St.,
Carthage, Missouri.
"Dear Mr. Dyer:—
"I am sending for your consideration this contract for your services as Outrider at Cahokia Downs for the 1961 racing season. Our season opens the 28th of April and runs through the 22nd of July, five days per week.
"Your compensation for your services will be $25.00 per day each day we race.

"If this is agreeable with you I will appreciate your signing this contract and returning it to the track immediately.
"Thanking you, I am.

Yours very truly,
CAHOKIA DOWNS, INC.
/s/ George Edw. Day
George Edw. Day
Managing Director
"GED¢[sic]ad
"/s/ Joe Dyer
Joe Dyer"

2. And necessity, which is not questioned.

$2,251.77 for travel expense and $190 for pony rental on the schedule attached to his claim for refund is not being questioned by the Government. Plaintiff's claim for refund is attached as Exhibit 'C'.[3]

"17. The Government disallowed travel expenses and meal and lodging expense incurred by Dyer between Carthage, Missouri and East St. Louis, Illinois and Collinsville, Illinois while in East St. Louis, Illinois and Collinsville, Illinois on the theory that his principal place of business was his home for tax purposes. The Government likewise disallowed travel expense between Carthage, Missouri and Hot Springs, Arkansas for the same reason, but allowed travel expense between East St. Louis, Illinois, Collinsville, Illinois area and Hot Springs, Arkansas and meals and lodging while in Hot Springs, Arkansas.

"18. Dyer claims that Carthage, Missouri is his home and business headquarters, and that he is entitled to deduct for travel expenses between Carthage, Missouri and East St. Louis, Illinois and Collinsville, Illinois and travel between Carthage, Missouri and Hot Springs, Arkansas and meals and lodging at East St. Louis, Illinois and Collinsville, Illinois and Hot Springs, Arkansas, and various other tracks as being his temporary places of employment and that such expenses were incurred in the pursuit of his business.

"19. Dyer incurred $190 in pony rental for ponies used by him as mounts in leading race horses from the paddock around the track and to the starting gate prior to the races. Dyer contends that this sum is deductible from gross income in arriving at adjusted gross income since the furnishing of a mount was a condition of his employment. The Government contends that the amounts expended is not so deductible.

"20. In the event of judgment for the Plaintiff in whole or in part, the parties believe that they will be able to agree as to the amount due the Plaintiff, but if they are unable to agree, any issue arising as to the amount due the Plaintiff will be presented to the court for determiniation [sic] at a later date."

## APPLICABLE STATUTES AND REGULATIONS

Internal Revenue Code of 1954, Title 26, U.S.C.A.:

"§ 62. *Adjusted gross income defined*

"For purposes of this subtitle, the term 'adjusted gross income' means, in the case of an individual, gross income minus the following deductions:

\* \* \* \* \* \*

"(2) Trade and business deductions of employees.—

\* \* \* \* \* \*

"(B) *Expenses for travel away from home.*—The deductions allowed by part VI (sec. 161 and following) which consist of expenses of travel, meals, and lodging while away from home, paid or incurred by the taxpayer in connection with the performance by him of services as an employee.

"(C) *Transportation expenses.*—The deductions allowed by part VI (sec. 161 and following) which consist of expenses of transportation paid or incurred by the taxpayer in connection with the performance by him of services as an employee."

"§ 63. *Taxable income defined*

"(a) *General rule.*—Except as provided in subsection (b), for purposes of this subtitle the term 'taxable income' means gross income, minus the deductions allowed by this

---

3. There is no issue concerning the sufficiency or timeliness of the claim for refund.

chapter, other than the standard deduction allowed by part IV (sec. 141 and following).

"(b) *Individuals electing standard deduction.*—In the case of an individual electing under section 144 to use the standard deduction provided in part IV (sec. 141 and following), for purposes of this subtitle the term 'taxable income' means adjusted gross income, minus—

"(1) such standard deduction, and

"(2) the deductions for personal exemptions provided in section 151."

"§ 162.   *Trade or business expenses*

"(a) *In general.*—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

\*       \*       \*       \*       \*       \*

"(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and

"(3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity."

"§ 262.   *Personal, living, and family expenses*

"Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses."

Treasury Regulations on Income Tax (1954 Code)

"§ 1.62–1.   *Adjusted gross income*
\*       \*       \*       \*       \*       \*

"(g)   Transportation expenses paid or incurred by an employee in connection with performance by him of services for his employer are de-ductible from gross income under part VI in computing adjusted gross income.  'Transportation', as used in section 62(2) (C), is a narrower concept than 'travel', as used in section 62(2) (B), and does not include meals and lodging.   The term 'transportation expense' includes only the cost of transporting the employee from one place to another in the course of his employment, while he is not away from home in a travel status.   Thus, transportation costs may include cab fares, bus fares, and the like, and also a pro rata share of the employee's expenses of operating his automobile, including gas, oil, and depreciation. All transportation expenses must be allowable expenses under part VI (section 161 and following), subchapter B, chapter I of the Code, as ordinary and necessary expenses incurred during the taxable year in carrying on a trade or business as an employee.   Transportation expenses do not include the cost of commuting to and from work; this cost constitutes a personal, living, or family expense and is not deductible.   (See section 262.)"

## QUESTIONS PRESENTED

1.  Whether in determining his adjusted gross income for 1960, plaintiff was entitled to deduct as trade or business expenses under Section 62, IRC 1954, the reasonable expenses of travel, away from Carthage, Missouri (plaintiff's legal domicil), totalling $2,251.77, which expenses were incurred as the cost of travel from Carthage, Missouri, to East St. Louis and Collinsville, both in Illinois, and between Carthage, Missouri, and Hot Springs, Arkansas (including meals and lodging while in East St. Louis and Collinsville but not while in Hot Springs)?

2.  Whether the plaintiff, who elected to take the standard deduction under Sections 141–144, IRC 1954, was entitled to deduct for 1960 the amount of $190.00 in pony rental, as a transportation ex-

pense under Section 62(2) (C), IRC 1954?

## OPINION ON FIRST QUESTION

Taxpayer contends that the travel expenses totalling $2,251.77 incurred in 1960 are deductible expenses under the expense for travel away from home category of the following Section 62(2) (B), IRC 1954:

"(B) *Expenses for travel away from home.*—The *deductions allowed by part VI* (sec. 161 and following) which consist of expenses of travel, meals, and lodging while away from home, paid or incurred by the taxpayer in connection with the performance by him of services as an employee." (Emphasis added.)

Taxpayer argues that the expenses are "deductions allowed by part VI in that they are deductible under the following Section 162(a) (2) of part VI:

" * * * traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business * * *."

As stated by the Supreme Court of the United States in Commissioner v. Flowers, 326 U.S. 465, 66 S.Ct. 250, l. c. 252, 90 L.Ed. 203, l. c. 207–208, one of the controlling authorities on deductions for travel expenses:[4]

"Three conditions must thus be satisfied before a traveling expense deduction may be made under § 23 (a) (1) (A) [now § 162(a) (2)]:

"(1) The expense must be a reasonable and necessary traveling expense, as that term is generally understood. This includes such items as transportation fares and food and lodging expenses incurred while traveling.

"(2) The expense must be incurred 'while away from home.'

"(3) The expense must be incurred in pursuit of business.

* * * * * *

" * * * Failure to satisfy any one of the three conditions destroys the traveling expense deduction."

Reasonableness and necessity of the questioned expenses are not controverted by the government.

The second condition is that the expenses be incurred "while away from home." The record in this cause clearly shows that plaintiff's legal domicil is in Carthage, Missouri, by virtue of his choice. However legal domicil and "home" for the purposes of Title 26, U.S.C.A., section 162(a) (2) are not synonymous. Cockrell v. Commissioner (C.A.8) 321 F.2d 504, and cases cited therein at page 507; Annot., Income Tax—Traveling Expenses, 3 L.Ed.2d 1570, l. c. 1578–1579 and cases cited in note 14. "Home" for purposes of Section 162(a) (2) is generally to be construed as the taxpayer's primary place of business or employment. Cockrell v. Commissioner, supra, 321 F.2d at 507; Annot., Income Tax—Traveling Expenses, supra, 3 L.Ed.2d at 1578 and cases cited in note 14. In a case where the taxpayer has more than one place of employment, the taxpayer's home for purposes of Section 162(a) (2) is deemed to be his principal place of business. Annot., Income Tax—Traveling Expenses, supra, 3 L.Ed.2d at 1579–1580.

Under Section 162(a) (3) travel expense is not deductible if it arises from the taxpayer's choice not to bring his place of residence close to his place or places of employment. Annot., Income Tax—Traveling Expenses, supra, 3 L.Ed. 2d at 1758. It is the employment rather than taxpayer's chosen pattern of living or legal domicil which must require taxpayer's expenses. Cockrell v. Commissioner, supra, 321 F.2d at 507.

This is not a case where a taxpayer has two or more places of employment and lives near one of them. See Annot., Income Tax—Traveling Expenses, supra, 3 L.Ed.2d at pp. 1577–1580. This is a case where a taxpayer has more than one

---

4. The other is Peurifoy v. Commissioner, 358 U.S. 59, 79 S.Ct. 104, 3 L.Ed.2d 30.

regular place of employment and does not live near any one of them.

In 1960, the tax year in question, the taxpayer's principal place of employment was in the vicinity of Collinsville, Illinois.[5] From the record in this cause it appears that the Collinsville area was taxpayer's principal place of employment during all of the years 1956 to 1961, inclusive. In addition during all of these years, including 1960, he was employed at Hot Springs, Arkansas, and other race tracks.

■ ■ Taxpayer has not borne the burden of proving that his employment at his principal place of employment in the Collinsville, Illinois, area was temporary. On the contrary, the Court finds as a fact that his employment in said area was not temporary but was rather seasonal, and recurring annually. Therefore plaintiff's "home" for purposes of Section 162(a) (2) is the Collinsville, Illinois, area.

Since taxpayer's home for purposes of Section 162(a) (2) is the Collinsville, Illinois, area, it is unnecessary to decide whether the expenses in question were incurred in pursuit of business.

It is therefore unnecessary to consider the validity of the exception engrafted to the Rule of the Flowers case, supra, by the Tax Court and accepted by some other courts.[6] This exception allows a deduction for expenditures for travel, meals and lodging when the taxpayer's employment is "temporary" as contrasted with "indefinite" or "indeterminate."

The taxpayer relies principally on Burns v. Gray (C.A.6) 287 F.2d 698. This case should be limited to the facts of that particular case as is indicated by the language of the Court at page 700 of 287 F.2d. The Burns case applied the questionable "temporary employment" exception to the Rule of the Flowers case after rejecting the government's contention that Wheeling, West Virginia, was Burns' home for tax purposes because he spent a greater portion of his employment time there during 1954, the tax year in question. The reason given was that the government's contention was rebutted by a showing that the taxpayer was not in any manner employed in Wheeling, West Virginia, in 1956. The Court in the Burns case further made the factual determination that the taxpayer did not deliberately select a place of employment at a place other than his home or, conversely, deliberately select a residence at a place other than where his regular place of employment was located. It is also noted that in the Burns case the taxpayer's legal domicil, Williamstown, Kentucky, was much less than 100 miles from both Lexington and Louisville, Kentucky, where the taxpayer repeatedly worked over a period of years.

Apart from the factual distinctions, however, there are expressions in the Burns case which are not in accord with the result reached herein. If the Burns case were the only decision on the subject by a Court of Appeals, this Court would follow that case under the Rule of United States v. Eddy Bros., Inc. (C.A. 8) 291 F.2d 529, l. c. 531. However, the

---

5. In 1960 plaintiff worked at the East St. Louis Jockey Club, Inc., in East St. Louis, Illinois, from April 22nd to July 22nd. He worked at the Fairmount Park Jockey Club, Inc., in Collinsville, Illinois, from July 22nd to October 14th. (Stip. No. 7.) Collinsville, Illinois, is approximately 9 miles from East St. Louis, Illinois. (Stip. No. 13.) Thus, for approximately 7 months in 1960 the taxpayer worked at Collinsville, Illinois, or approximately 9 miles away in East St. Louis, Illinois, residing at all times in Collinsville, Illinois. (Stip. No. 14.)

6. The cases are collected, and the confusion among the authorities is discussed, in 1 Rabkin & Johnson, Federal Income, Gift and Estate Taxation § 3.06(4), pp. 347a–47c. The decisions in this Circuit are apparently in conflict on the validity of the exception. See, e. g., Commissioner of Janss (C.A.8) 260 F.2d 99, l. c. 103 (criticizing the exception); Cockrell v. Commissioner (C.A.8) 321 F.2d 504 (apparently applying the exception). For a United States Supreme Court decision applying the exception without approving it, see Peurifoy v. Commissioner, 358 U.S. 59, 79 S.Ct. 104, 3 L.Ed.2d 30.

Burns case is not the only case in point, and it cannot be reconciled with some of the cases decided by the United States Court of Appeals for this Circuit. See, e. g., Commissioner v. Janss (C.A.8) 260 F.2d 99. It is also possible that the Burns case is not in accord with the rationale of either the Flowers case, supra, or the Peurifoy case, supra note 4, the two leading United States Supreme Court cases in the area, neither of which was cited in the Burns case.

## OPINION ON SECOND QUESTION

Taxpayer contends that the pony rental fee of $190.00 paid by him in 1960 is a deductible expense under the transportation expense category of Section 62 (2) (C), IRC 1954:

"Transportation expenses.—The deductions allowed by part VI (sec. 161 and following) *which consist of expenses of transportation* paid or incurred by the taxpayer in connection with the performance by him of services as an employee." [7] (Emphasis added.)

Taxpayer argues that the pony rental fee is a "deduction allowed by part VI" in that it is deductible under either Section 162(a) (2),

"* * * traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business * * *,"

or Section 162(a) (3),

"* * * rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity."

■ The pony rental fee would be deductible as a trade or business expense under Section 162(a) (3), IRC 1954, supra, if it were not for the fact that

taxpayer elected to take the standard deduction for the tax year. But the pony rental fee is not an "expense of transportation" within the meaning of Section 62(2) (C) and therefore not deductible by a taxpayer who has elected the standard deduction. See Treasury Regulations on Income Tax (1954 Code) Section 1.62–1(g).

It is therefore

Ordered, adjudged and decreed that plaintiff's petition for refund be, and the same is hereby, denied.

---

7. The Commissioner's determination that taxpayer is an employee is not contested by taxpayer. In fact, taxpayer's brief assumes that he is an employee.