**Maurice M. WILLS and Gertrude E. Wills, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 22427.**

United States Court of Appeals
Ninth Circuit.

May 14, 1969.

538

Francis J. Butler (argued), of Butler & Lukins, Spokane, Wash., for appellants.

Edward L. Rogers, Washington, D. C. (argued), Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Crombie J. D. Garrett, Attys., Dept. of Justice, Lester R. Uretz, Chief Counsel, IRS, Washington, D. C., for appellee.

Before BARNES, DUNIWAY and CARTER, Circuit Judges.

BARNES, Circuit Judge:

This case arises upon a petition to review a decision of the Tax Court sustaining the Commissioner's determination of deficiencies in the taxpayers' income taxes paid for the years 1962 and 1963. The opinion of the court below is reported at 48 T.C. 308 (1967). Jurisdiction is conferred on this court by 26 U.S.C. § 7482.

Taxpayers Maurice M. Wills and Gertrude E. Wills are husband and wife. They filed joint income tax returns on a cash basis for the calendar years 1962 and 1963. Taxpayer Maurice M. Wills has been a professional baseball player since 1951. From June 1959 through November 1966, he played baseball for the Los Angeles Dodgers, whose club home is Los Angeles, California.

The 1962 and 1963 contracts between Wills and the Dodgers provided that Wills was to be paid semimonthly at the Dodger headquarters in Los Angeles. About half the Dodgers' games were played each season in Los Angeles, and in 1962 and 1963 taxpayer spent at least 87 days in Los Angeles as a member of the Dodger baseball team. In 1963, he spent four additional days in this city in connection with the World Series, and additional time there (perhaps three weeks) preparing for a night club routine with five other members of the Dodger team. Taxpayer spent the remainder of the 1962 and 1963 baseball seasons at (or traveling to and from) the other cities where the Dodger games were played. He also spent five or six weeks each year in Florida for spring training, and about a week in 1962 and two weeks in 1963 in Las Vegas, Nevada, participating in a night club routine with other teammates.

In 1958, Wills bought a house in Spokane, Washington. He and his family used this house as a personal residence. In January 1962, he bought a second house in Veradale, Washington, on the outskirts of Spokane. Taxpayer and his family vacated the first house and moved into the second, where they lived during 1962 and 1963, the two years in question. The first house was retained and used as rental property until it was sold in 1965. Wills' wife and five children resided in Spokane during the period in issue, and when he was in Spokane, taxpayer stayed at the residence with his family. In 1962 and 1963, he spent 138 and 96 days there respectively.

During 1962 and 1963, taxpayer did public relations work for the Dodger minor league team, the Spokane Indians, in Spokane. He received $5,000 from the Dodgers each year for this work.

In Los Angeles, Wills lived with the pastor of the church he attended in Los Angeles, and paid rent for these accommodations.

In 1962, taxpayer broke the major league baseball record for the most stolen bases in one season. He played in the 1962 All Star game and was voted "player of the game." He was also voted "most valuable player" of the National League, and received awards from the Associated Press as "Athlete of the Year," the Sport Magazine as "Man of the Year," the Baseball Writers as "Athlete of the Year," and California as "Athlete of the Year."

Following the final Dodger game of the 1962 season, taxpayer was also awarded an MG automobile with a fair market value of $1,731. This award was made by an automobile agency in Los Angeles after Wills was elected "most popular Dodger" by the patrons of that last game.

In January 1963, taxpayer received the S. Rae Hickok belt, stipulated to have had a fair market value of $6,038.19 at the time of receipt. The belt is awarded annually to the outstanding professional athlete of the prior year, and the predominant criterion for selecting each recipient is excellence in athletics. Ballots for electing the winner of the belt were sent to over 250 sportswriters and sportscasters throughout the United States, and the outcome of that vote determined who received the award. The belt was presented to Wills without any restrictions upon its disposition.

In his notice of deficiency, the Commissioner asserted that (1) the deductions claimed by taxpayer for travel, meals and lodging expenses incurred in the vicinity of Los Angeles were not allowable, for the reason that taxpayer had not established that these expenses were incurred "while away from home," as required by 26 U.S.C. § 62; (2) the fair market value of the MG automobile received by taxpayer as a prize or award was taxable as ordinary income under 26 U.S.C. § 74(a); and (3) the fair market value of the Hickok belt received by taxpayer as a prize or award was taxable as ordinary income under 26 U.S.C. § 74(a). The Tax Court upheld the Commissioner's determination with regard to each of these three items, and the cor-

rectness of that decision is now before us.

The Internal Revenue Code, 26 U.S.C. § 62(2) (B), provides that a taxpayer may deduct from his gross income "expenses of travel, meals, lodging while away from home, paid or incurred by the taxpayer in connection with the performance by him of services as an employee."

In the case of the present taxpayer, the Tax Court found that Los Angeles was his principal post of business and "home" for purposes of the Internal Revenue Code. The court also found that the taxpayer's motives for maintaining a residence in Spokane were personal rather than business oriented, and noted that employment by the Dodgers similar to that which Wills had in Spokane would have been available to him in Los Angeles.

Much litigation has centered about the location of an employee's tax home. In Commissioner of Internal Revenue v. Flowers, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203 (1946), the Supreme Court considered this question and held that before a traveling expense deduction may be made the expense must be reasonable and necessary, it must be incurred while "away from home," and must be incurred in pursuit of business. The Court then held that where the taxpayer resided in one city and had his principal post of business in another, his expenses of commuting between residence and work were personal, and not deductible as business expenses. The Court concluded by stating that travel expenses in pursuit of business can arise only when the employer's business forces the taxpayer to travel and live temporarily in some place other than the principal place of business, thereby advancing the interests of the employer. And finally, *Flowers* also stated that business trips are to be identified in relation to business demands *and the traveler's business headquarters*, and that the exigencies of business rather than the personal conveniences of the traveler must be the motivating factors.

The principles articulated in *Flowers, supra,* have subsequently been applied in other situations. Thus, the Supreme Court held in Commissioner of Internal Revenue v. Stidger, 386 U.S. 287, 87 S.Ct. 1065, 18 L.Ed.2d 53 (1967), that the taxpayer's permanent post of duty was his home for tax purposes, even though the taxpayer's family could not live there. Other cases holding that the taxpayer's principal place of business is his tax home include Smith v. Warren, 388 F.2d 671 (9th Cir. 1968) and Steinhort v. Commissioner of Internal Revenue, 335 F.2d 496, 502–503 (5th Cir. 1964). See also Wright v. Hartsell, 305 F.2d 221, 223–224 (9th Cir. 1962).

No reported cases have determined the tax home of a professional baseball player. However, Revenue Ruling 54–147, 1954–1 Cum. Bull. 51, deals with this specific question and relying principally upon Commissioner of Internal Revenue v. Flowers, *supra,* provides that such taxpayers may deduct their traveling expenses when away from the "club town" in pursuit of business or employment.

■ In light of the above authorities, we hold that the Tax Court correctly determined that Wills' tax home was Los Angeles during the years in question, and that his expenses incurred for travel, meals and lodging in this area are not deductible as business expenses.

■ We are further impelled toward this conclusion by the fact that the determination of one's tax home essentially involves the resolution of a question of fact, so that the inferences and conclusions of the Tax Court must be given great weight by an appellate court. Commissioner of Internal Revenue v. Flowers, *supra,* 326 U.S. at 470, 66 S.Ct. 250; Peurifoy v. Commissioner of Internal Revenue, 358 U.S. 59, 79 S.Ct. 104, 3 L.Ed.2d 30 (1958); Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 289, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960).

Further, we agree with the Tax Court that the decisions in Patricia A. Ruby

Hall, T.C.Memo. 1964–157, and Judy L. Gooderham, T.C.Memo. 1964–158, do not compel the conclusion that Wills' tax home was Spokane. As noted by the Tax Court, taxpayers Hall and Gooderham were employed by the Ice Follies and traveled on tour from city to city. They were never employed a substantial period of time in one city, as taxpayer Wills was, in the present case, in his "club town."

Nor are the decisions in cases such as Harvey v. Commissioner of Internal Revenue, 283 F.2d 491 (9th Cir. 1960) and Wright v. Hartsell, *supra* at 224, here controlling. In *Harvey*, we stated that an employee might be said to change his tax home if there is a reasonable probability known to him that he may be employed for a long period of time at his new station, and held that the particular taxpayer had not changed his tax home where employment at the new station normally lasted only a few months. In Wright v. Hartsell, we stated that where it appears probable that a taxpayer's employment outside the area of his residence will be "temporary" or "short," then his travel expenses are deductible, but that where it appears the work will continue for an "indefinite" or "substantially long" period, the deduction is disallowed. At the beginning of the period here in question, Wills had completed three successful seasons with the Dodgers and could reasonably expect this employment to continue, as it in fact did for a total period of seven years.

We next consider the taxability of the automobile and the belt received by taxpayer. With regard to prizes and awards, 26 U.S.C. § 74 provides:

"(a) *General rule.*—Except as provided in subsection (b) and in section 117 (relating to scholarships and fellowship grants), gross income includes amounts received as prizes and awards.

"(b) *Exception.*—Gross income does not include amounts received as prizes and awards made primarily in recognition of religious, charitable, scientific, educational, artistic, literary, or civic achievement, but only if—

"(1) the recipient was selected without any action on his part to enter the contest or proceeding; and

"(2) the recipient is not required to render substantial future services as a condition to receiving the prize or award."

It is clear that Wills received the two awards without any action on his part to enter any contest, and that he was not required to render any future services. Thus Wills is not barred by (1) and (2) above, if he falls within (b), *supra*. The difficult question we must decide is whether the two awards come within any exception listed in subsection (b) or whether they are taxable under subsection (a). In order to recover, the taxpayer must show that his award comes within one of the specified exceptions. Griggs v. United States, 314 F.2d 515, 161 Ct.Cl. 84 (1963).

The Tax Court found that the award of the MG automobile was made for taxpayer's popularity alone, and that there was no indication that it was given for religious, charitable, scientific, educational, artistic, or civic achievements. The Tax Court then concluded that this award for popularity did not fall within any of the categories listed in § 74(b) and, accordingly held that the fair market value of the automobile was includible in taxpayer's taxable income.

The Tax Court further found that the Hickok belt was awarded to Wills primarily in recognition of athletic skills, and that excellence in sport is the predominant criterion for selecting the recipient. The court then held that the fair market value of the belt must be included in Wills' taxable income.

Taxpayer here contends that we should reverse the decision of the Tax Court with respect to the car and the belt, for the reason that these awards

were made for civic and artistic achievement. He cites no legal authority in support of this proposition.

A firmly established principle of statutory interpretation is that the words of statutes, including revenue acts, should be interpreted in their ordinary and usual senses wherever possible. Malat v. Riddell, 383 U.S. 569, 571, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966); Hanover Bank v. Commissioner of Internal Revenue, 369 U.S. 672, 687, 82 S.Ct. 1080, 8 L.Ed.2d 187 (1962); Commerce-Pacific, Inc. v. United States, 278 F.2d 651, 654 (9th Cir.), cert. denied, 364 U.S. 872, 81 S.Ct. 115, 5 L.Ed.2d 94 (1960). The Tax Court considered the taxpayer's contention that his awards were for civic achievement, and rejected this characterization of his achievement. In other cases also, courts have been urged to regard certain achievements as civic or artistic, and have rejected such arguments in favor of construing these terms in their ordinary and usual senses.

In Hornung v. Commissioner, 47 T.C. 428 (1967), for example, the petitioner was a well-known professional football player who was awarded a new Corvette automobile for being selected as the outstanding player in the National Football League championship game. He asserted that this award was made in recognition of educational, artistic, scientific and civic activity, but the court concluded that the car was received in recognition of athletic achievement—which was not encompassed by the terms of § 74(b), as those terms are ordinarily understood.

The court in *Hornung* relied in large part upon the decision in Simmons v. United States, 308 F.2d 160 (4th Cir. 1962). The court in *Simmons* rejected the contention that a prize presented for catching a particular fish was awarded for a "civic achievement" within the meaning of § 74(b), and held that the crucial test for exemption under the statute is the nature of the activity being awarded. The court further refused to adopt the suggestion that the prize was for a civic achievement since it rewarded the taxpayer's skill as a fisherman, and stated that a "civic achievement" implies positive action which is exemplary, unselfish and broadly advantageous to the community. It was also noted that all the fields of endeavor listed in § 74(b) represent activities enhancing in some way the public good.

In light of the above standards for characterizing an activity as a civic achievement, we cannot say that the Tax Court's finding that Wills received the car and belt for his popularity and athletic prowess and that these accomplishments did not constitute civic achievements, was clearly erroneous.

Nor can we hold that the Tax Court clearly erred in finding that Wills was not rewarded for artistic achievements. As the term "artistic" is ordinarily used, it connotes activities of an aesthetic nature, including, for example, painting, drawing, architecture, sculpture, poetry, music, dancing and dramatics. In normal parlance, athletic achievements are not regarded as "artistic," despite the great skill which is frequently necessary for athletic success.

We find further support for our decision in the fact that Congress has recently heard several proposals to add the word "athletic" to the list of exempted prizes in § 74(b), but has, thus far, refused to do so. For example, on September 13, 1967, Senator Smathers, referring to the decision of the Tax Court in the present case, proposed such an amendment. *See*, S. 2397, 90th Cong., 1st Sess., 113 Cong. Rec. 25384–25385 (1967). When introducing his bill, he acknowledged that under the present statute there is a basis for taxing the recipient on the value of any award received for athletic achievement, and specifically stated that he did not mean to be critical of the Tax Court for the reason that the court correctly observed that Congress had not expressed itself on the question of athletic awards as it had with religious, charitable, scientific,

educational, artistic, literary and civic awards. We note that had Senator Smathers' bill been enacted, it would have affected only awards received after the date of enactment. Thus, even if the amendment had been passed, it would not affect our decision in the present case. Similar bills were also introduced in the House of Representatives, but not passed. *See* H.R. 12453, 90th Cong., 1st Sess. (1967); H.R. 13190, 90th Cong., 1st Sess. (1967); H. R. 13823, 90th Cong., 1st Sess. (1967); H.R. 13825, 90th Cong., 1st Sess. (1967); H.R. 13875, 90th Cong., 1st Sess. (1967); H.R. 13946, 90th Cong., 1st Sess. (1967); H.R. 13979, 90th Cong., 1st Sess. (1967).

■ The taxpayer here makes the further argument that the Hickok belt should not be taxed because it is a "trophy." This argument has some equitable appeal, for the reason that a trophy is not a utilitarian item (such as an automobile) which the taxpayer would ordinarily purchase with his earned income. Yet the argument has no basis in the Internal Revenue Code. To agree, as the taxpayer does, the belt could be sold for some amount is to agree that the belt is the "equivalent of cash" in which case it is taxable when received. 2 Mertens, Law of Federal Income Taxation, Ch. 11 (1967). As previously stated, the crucial criterion is the *nature of the activity* awarded. The Code draws no distinctions based on the *form* of the award.

■ If the award is in the form of property other than cash, the only problem is one of valuation—not taxability. Property thus received is to be taxed at its fair market value at the time of receipt. Treas.Reg. § 1.74–1(a) (2). Koons v. United States, 315 F.2d 542, 544–545 (9th Cir. 1963). Valuation is not an issue in the instant case, for the taxpayer has not disputed the Commissioner's evaluation.

■ Nor does the taxpayer here contend that the car and belt were received as gifts. Such a contention would seem to be precluded by Congress' intention in enacting § 74, and by the absence of the requisite disinterested generosity. *See* Commissioner of Internal Revenue v. Duberstein, *supra* 363 U.S. at 285, 290, 80 S.Ct. 1190; Simmons v. United States, *supra* 308 F.2d at 164.

The decision of the Tax Court is

Affirmed.

The law as it presently exists requires the foregoing conclusion. We dislike it, for we are convinced it is an inequitable result. The next step would be for the Internal Revenue Service to tax the gold and silver in the medals awarded to Olympic Games' winners. Unfortunately for the taxpayer in this case, the court has no authority to legislate equities into the Internal Revenue Code or the Treasury Regulations. Both the problem and the remedy lie with the Congress, not with the courts.[1]

1. "The regulation here in question represents an effort by the Commissioner to supply the definitions that Congress omitted. [footnote omitted] And it is fundamental, of course, that as 'contemporaneous constructions by those charged with administration of' the Code, the Regulations 'must be sustained unless unreasonable and plainly inconsistent with the revenue statutes,' and 'should not be overruled except for weighty reasons.' Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 501 [68 S.Ct. 695, 698, 92 L.Ed. 831]. In this respect our statement last Term in United States v. Correll, 389 U.S. 299 [88 S.Ct. 445, 19 L.Ed.2d 537], bears emphasis:

'[W]e do not sit as a committee of revision to perfect the administration of the tax laws. Congress has delegated to the Commissioner, not to the courts, the task of prescribing "all needful rules and regulations for the enforcement" of the Internal Revenue Code. 26 U.S.C. § 7805(a). In this area of limitless factual variations, "it is the province of Congress and the Commissioner, not 'the courts, to make the appropriate adjustments." ' *Id.*, at 306–307 [88 S.Ct. at 449]." Bingler, etc. v. Johnson et al., 394 U.S. 741, 89 S.Ct. 1439, 22 L.Ed. 2d 695 (decided April 23, 1969).