Coy B. HENSON and Allynn Henson

v.

UNITED STATES of America.

Civ. A. No. 70-B-31.

United States District Court, S. D. Texas, Brownsville Division.

Dec. 20, 1971.

Storter, Carinhas & Cunningham, George Storter, Brownsville, Tex., for plaintiffs.

Anthony J. P. Farris, U. S. Atty., and George R. Pain, Asst. U. S. Atty., Houston, Tex., Fred B. Ugast, Acting Asst. Atty. Gen., Ben A. Douglas and Michael D. Cropper, Attys., Dept. of Justice, Dallas, Tex., for defendant.

MEMORANDUM

GARZA, District Judge.

Taxpayer, Coy B. Henson, and his wife, Allynn Henson, bring this action against the United States, Internal Revenue Service, for refund of a total of $2,757.93, in income taxes which were paid for the years 1965, 1966 and 1967. Mr. and Mrs. Henson filed joint income tax returns for the years in issue, therefore they are both parties to the action. Mrs. Henson is involved here only because she signed the joint returns; Mr. Henson will be hereinafter referred to as "taxpayer". Taxpayer is in the citrus business. He not only farms his own orchards, but is also involved in an orchard care enterprise in which he contracts to manage and maintain orchards owned by others.

Taxpayer graduated from The University of Texas with a degree in petroleum geology in 1926. After two years in the Rio Grande Valley in the agricultural real estate business, he moved to Amarillo to enter the business of real estate and wheat farming. In 1933, while residing in Amarillo, he bought 133 acres of land north of Edcouch, Texas, and set out his first orchard. Taxpayer moved from Amarillo to Weslaco, Texas, in 1938, and three months later to Houston, where he sold Rio Grande Valley real estate. In 1942, he moved to Weslaco again and bought some additional land. He there operated the orchards which he had owned previously, plus the newly-acquired orchards, and farmed both vegetables and cotton until 1950.

In 1950, taxpayer moved to Austin, his Valley farming and orchard operations being continued with a local manager. In 1953, taxpayer purchased two ice plants, one in Llano, and an automobile sales agency in Brownwood. The automobile sales agency was sold in 1955, and the ice plants in 1962. In 1955, taxpayer encountered Dr. J. B. Williams, who purchased twenty-two and a half acres of taxpayer's Valley orchard land. In 1956, Dr. J. F. L. Blasingame, a Wharton physician, purchased another seventeen and a half acres, and later in the same year, an additional forty-acre orchard. Through Dr. Blasingame, taxpayer was able to make contacts with other physicians around the United States, who were interested in orchard investments. Many of these contacts eventually did invest in Valley orchards. When one of his orchards was sold, taxpayer usually agreed to care for the trees thereon for a fee. Taxpayer, with a foreman and crew, cared for and maintained not only his personal orchards, but those which he had sold. The greater number of his clients were physicians, although some orchards were sold to others. Since 1955, subsequent to the sale of his first orchard, taxpayer has sold numerous parcels of orchard land, and has frequently entered into grove care contracts with the purchasers. Periodically, some of taxpayer's orchard vendees have removed their orchards from his care and entered into contracts with other orchard care organizations.

Taxpayer's main source of income during the years in question was from his farming and grove care operations. A minor source of income was rent from some apartments he owned in Austin and some small office buildings in Weslaco. Taxpayer has lived in Austin since 1950, and for his Valley operations employed one foreman and five other agricultural laborers, who worked out of the grove care headquarters near Edcouch, Texas. Taxpayer owned tractors, sprayers, shredders, water pumps, and other miscellaneous farm equipment to maintain his orchards and those maintained by him under grove care contracts. The gross income for taxpayer's farming and grove care operations for the years 1965, 1966 and 1967, was in excess of $307,000.00.

During the years in question, taxpayer traveled to the Valley from Austin on an average of two times per month, in his personal car. Taxpayer used these trips to examine his personal orchards and those which he had under grove care contracts, and to consult with his fore-

man N. R. Chavez, to make plans and determinations with respect to his operations. Foreman Chavez submitted regular reports to taxpayer by mail, and taxpayer sent payroll funds and information by mail to Mr. Chavez. For the period in question, taxpayer resided in Austin and set aside a portion of the space in his residence for use as an office.

The principal question to be decided here is whether taxpayer's travel expenses may be deducted for income tax purposes, when he traveled from Austin, Texas, where his residence was located, to the Rio Grande Valley of Texas, where his principal place of business was located. Internal Revenue Code of 1954, Section 162(a) (2) allows the deduction of all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including "traveling expenses . . . while away from home in the pursuit of a trade or business . . . ". The case of Commissioner of Internal Revenue v. Flowers, 326 U.S. 465, 66 S. Ct. 250, 90 L.Ed. 203 (1946), concerned the travel expenses of an attorney for a railroad company, who completed the major portion of his work at his residence in Jackson, Mississippi, where he had his professional and social ties, and the remainder of his work he performed in Mobile, Alabama, where the company's main office was located. His sole income was derived from his employment with the railroad, and in 1939, he spent 203 days in Jackson and 66 days in Mobile, making thirty-three trips between the two cities. Under his agreement with the railroad company, he paid the expenses of maintaining both a residence in Jackson and one in Mobile. His secretary, who worked with him in both locations, had her entire salary paid by the railroad, including her expenses while working in Jackson. Taxpayer's principal place of business was the main office of the railroad in Mobile.

The Supreme Court, in *Flowers*, disallowed taxpayer's deductions of his traveling expenses between Jackson and Mobile, concluding that the traveling expenses, meals and accommodations while in Mobile were non-deductible living and personal expenses. The Court was dealing with the same language of the Internal Revenue Code of 1939 that is involved here, although here we deal with the Internal Revenue Code of 1954. The Court stated 326 U.S. at page 474, 66 S. Ct. at page 254, in relation to the deduction of travel expenses incurred in the pursuit of business, that "the exigencies of business rather than the personal conveniences and necessities of the traveler must be the motivating factors". Taxpayer, in the present case, testified that in his particular business, contacts with potential orchard investors necessitates his continued residence in Austin. Taxpayer testified that he attends medical meetings and conventions and is able to keep in touch with his clients and find new ones in this manner, since his clients are mostly physicians. It is his opinion that his business would drastically decline, if he did not reside in the Austin area. This apparently is the only ground taxpayer asserts for the proposition that the exigencies of his business require him to remain in Austin. The evidence shows that taxpayer has no other business activities of any import in Austin, but that he and his daughter, who is his secretary, handle the grove care business from that city.

In this case, we have a situation similar to that in *Flowers*. Here, taxpayer's principal place of business is in the Rio Grande Valley, where all his grove care operations are conducted, where his grove care headquarters buildings are located, and where he must travel periodically to inspect his business interests. The Fifth Circuit, in two recent decisions, has spoken to the question of the deductibility of travel expenses under Section 162(a) (2), stating that for purposes of the section, a taxpayer's "home" is his abode at his principal place of business or employment. Jones v. Commissioner of Internal Revenue, 444 F.2d 508 (CA 5 1971);

Curtis v. Commissioner of Internal Revenue, 449 F.2d 225 (CA 5 1971). Where a taxpayer's "home" is located is essentially a question of fact, *Flowers, supra,* and this Court finds that taxpayer's "home" in this case, for purposes of Section 162(a) (2) is located in the Rio Grande Valley of Texas, and not in Austin, Texas. This Court also finds that the herein contested expenses were non-deductible personal expenses for the personal convenience and necessity of taxpayer. *Flowers, supra;* Ford v. Commissioner of Internal Revenue, 227 F.2d 297 (CA 4 1955). In addition, there is no evidence and no contention that the expenses incurred were temporary or indefinite, bringing them within an exception to the general rule prohibiting deduction. *Jones, supra.* It is clear from the facts and circumstances of this case that taxpayer's residence in Austin is not indispensable to his business activities. The Court, therefore, finds that the expenses incurred for meals, lodging and transportation between Austin and the Rio Grande Valley were personal, living or family expenses, which, under Section 262 of the Internal Revenue Code of 1954, are non-deductible for the years 1965, 1966 and 1967. Taxpayer's claim for refund, as to these expenses, must therefore fail.

■ The Commissioner has also disallowed taxpayer's deduction of $600.00 a year for the years in question, for the expense of maintaining an office in his home. Taxpayer apparently just took a flat $50.00 deduction for office expense. In accordance with Revenue Ruling 62–180, the Commissioner asked the taxpayer to substantiate this deduction, and by letter attached to his deposition, he attempted to do so by showing that his office occupied 200 square feet of the 4800 square feet of his home; that his monthly light bill was $40.00, his gas bill $20.00, his water bill $15.00, and that his yearly insurance premium was $80.00. It was further shown that he allocated $10.00 of his maid's service per month, and $5.00 of his yardman's wages was also allocated to his office.

The taxpayer also claimed that the market value of his home was $100,000.00, which has not been disputed. While the Revenue Ruling above referred to contemplates that a pro rata part of the expenses of the home should be deducted only, it also contemplates that it is not the only method, and it states that "any other method which is reasonable under the circumstances will be acceptable". Taking all the evidence before me, I find that a deduction for office expense of $300.00 per year should be allowed.

This constitutes the Findings of Fact and Conclusions of Law of this Court. When the parties compute the refund due taxpayer, an appropriate judgment should be submitted to the Court for entry.