FRANKLIN C. DILLEY AND KATHERINE DILLEY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5258–70. Filed May 11, 1972.

*Paul Beer* and *Michael W. Margrave*, for the petitioners.
*Harry Beckhoff*, for the respondent.

STERRETT, *Judge*: The respondent determined a deficiency in petitioners' Federal income tax of $1,109.59 for the taxable year ended December 31, 1968.

Due to concessions, the only issue remaining for adjudication is whether expenditures incurred by petitioner Franklin C. Dilley are deductible under the provisions of section 162(a)(2), I.R.C. 1954,[1] as traveling expenses while away from home.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation together with the exhibits attached thereto are incorporated herein by this reference.

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.

Franklin C. Dilley (hereinafter referred to as petitioner) and Katherine Dilley are husband and wife and their legal residence was Phoenix, Ariz., as of the date their petition was filed with the Tax Court. Their joint Federal income tax return for the calendar year 1968 was filed on the cash basis with the district director of internal revenue at Phoenix, Ariz.

Petitioner has been a legal resident of Arizona since 1935, at which time he came to the State because of poor health, namely, pulmonary tuberculosis. He became associated with racing in the Phoenix area in or about 1941, working in part-time positions at horse and dog racetracks. From 1949 through 1959 petitioner worked fulltime at the Arizona tracks, leaving the State only during the summer months to work at neighboring tracks.

In 1960 petitioner commenced full-time employment with the Funk Racing Organization (hereinafter referred to as Funk Racing) as manager of its parimutuel operations. Funk Racing owned five dog tracks, four in Arizona and one in Pensacola, Fla. Petitioner spent the major portion of his time at the Arizona tracks. However, during the summer months he was stationed at the Pensacola track.

In July of 1965, while working in Pensacola, Funk Racing fired petitioner because of a mistaken payoff. Thereafter petitioner returned to Arizona. He attempted to acquire a position with several of the other racetracks through the Arizona Unemployment Commission, but was unsuccessful. He did however acquire a temporary position through a friend at a Las Vegas track, working on weekends for a 3-month period. Petitioner did not seek employment outside the State of Arizona or outside the racing field.

In the spring of 1966 petitioner was approached by the new owners of the Pensacola track. Due to petitioner's prior experience at the Florida track they offered him a position as a parimutuel manager for the 1966 racing season; approximately 5 months, running from May through September. Petitioner exercised no initiative in securing this employment as he had already accepted a previous offer in Lafayette, La. He accepted the offer. Thereupon he and his wife drove to Florida and rented an apartment for the racing season. At the conclusion of the 1966 season petitioner returned directly to Phoenix.

Prior to actually leaving Pensacola petitioner was informally notified by a track official that they would "see him next year." In January or February of the following year petitioner received a telephone call confirming his position as parimutuel manager for the 1967 season. It was only after this call that petitioner secured an apartment for the upcoming racing season. Petitioner had no employment in 1966 other than the Pensacola job.[2]

Petitioner returned to Florida with his wife for the 1967 season. At

---

[2] Evidently petitioner later rejected the job acquired prior to the position in question.

its conclusion he immediately returned to Phoenix. Petitioner was again informally notified of his anticipated employment for the following year. He received a phone call in January confirming the position. He had no other employment during 1967.

Petitioner returned to Pensacola with his wife for the 1968 racing season. He was reimbursed $408 by his employer for expenses incurred in traveling between Phoenix and Pensacola. However, on his way to Florida he stopped at Lafayette, La., where he worked 3 days for the Evangeline Downs Race Track before reporting to Pensacola. He returned to Louisiana the following week working for another 3 days for a total employment of 6 days over a 13-day period. He received $900 in wages.

Petitioner worked in Pensacola for the entire 1968 season; a period covering approximately 5 months, for which he received wages of $11,850. At the conclusion of the season petitioner returned to Phoenix, once again receiving an unofficial confirmation of employment for the following year. He had no other employment during 1968.

Petitioner, upon request, again returned to Florida for the 1969 season. At the close of the season he was once again unofficially informed of a continuing position for the following year. However, petitioner received a letter dated February 2, 1970, notifying him that he would not be rehired for the 1970 season due to job consolidation.

During the 1970 and 1971 racing seasons, petitioner was employed by Evangeline Downs Race Track at Lafayette, La., as parimutuel manager.

While away from his personal residence each year petitioner had a couple live in his home. Petitioner paid all household expenses and received no rent from the occupants.

Petitioner's employer did not require petitioner to live in Florida during the racing season. He did so as a matter of convenience to be nearer his job.

Petitioner, due to his medical condition, would under no circumstances ever have moved to Florida on a permanent basis.

In addition to petitioner's salaried earnings of $12,750 during 1968 he also reported additional income of $16,031 consisting of the following:

| | | |
|---|---|---|
| Interest income | | $2,512 |
| Dividend income | | 6,272 |
| Net capital gain from sale of stock | $8,207 | |
| Capital gain from installment sale payment (sold 1962) | 6,728 | |
| Capital loss from condemnation of real estate | (3,966) | |
| Capital gain dividend | 3,525 | |
| | 14,494 | |
| Sec. 1202 deduction | 7,247 | 7,247 |
| Total additional income | | 16,031 |

The condemned real estate was located in Arizona. Petitioner also owned at least one additional piece of property in or about the same area. He was however not in the real estate business.

On his 1968 Federal income tax return petitioner deducted his traveling expenses between Phoenix, Lafayette, and Pensacola and all living expenses while working at the Pensacola and Lafayette tracks.[3] Respondent disallowed the expenses incurred in traveling to and from and living in Pensacola.

OPINION

Petitioner has been a legal resident of Arizona since 1935. For 5 months of each year beginning in 1966 and running through 1969, he was employed as a parimutuel manager at a racetrack in Pensacola, Fla. The sole issue presented for determination relates to whether expenditures incurred by petitioner for travel, meals, and lodging while in Florida during 1968 are deductible as traveling expenses while away from home within the context of section 162(a)(2) which states in part:

SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

\* \* \* \* \* \* \*

(2) traveling expenses (including amounts expended for meals and lodging \* \* \*) while away from home in the pursuit of a trade or business \* \* \*

In *Commissioner* v. *Flowers*, 326 U.S. 465, 470 (1946), the Supreme Court stated:

Three conditions must thus be satisfied before a traveling expense deduction may be made under \* \* \* [sec. 162]:

(1) The expense must be a reasonable and necessary traveling expense, as that term is generally understood. This includes such items as transportation fares and food and lodging expenses incurred while traveling.

(2) The expense must be incurred "while away from home."

(3) The expense must be incurred in pursuit of business. This means that there must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or of his employer. Moreover, such an expenditure must be necessary or appropriate to the development and pursuit of the business or trade.

The facts in the *Flowers* case indicate that the taxpayer's principal place of employment was Mobile, Ala., but he continued to live in Jackson, Miss., and travel to Mobile. The Court held that by choosing to live a distance from his place of employment the taxpayer could not transform living expenses into business expenses since such ex-

---

[3] Petitioner did not deduct the expenses incurred for or on behalf of his wife.

penditures were not required by the "exigencies of the business." The taxpayer could reasonably have been expected to move, and then such expenses would have been unnecessary.

The facts in the instant case would seem to fall squarely within the prohibition enunciated above. However, since the decision in *Flowers*, an exception has been carved out wherein expenses connected with temporary employment, of short duration, away from one's tax home have been held to be deductible. *Hollie T. Dean*, 54 T.C. 663 (1970) ; *Alois Joseph Weidekamp*, 29 T.C. 16 (1957). Such an exception was created on the theory that it would be unreasonable to require one to move to his place of employment when such employment is of limited duration. *Truman C. Tucker*, 55 T.C. 783 (1971) ; *Emil J. Michaels*, 53 T.C. 269 (1969) ; *Ronald D. Kroll*, 49 T.C. 557 (1968). And therefore the taxpayer is allowed a deduction to mitigate the burden of duplicate expenses. *Ronald D. Kroll, supra.* Such a determination is a question of fact. *Wills* v. *Commissioner*, 411 F. 2d 537 (C.A. 9, 1969), affirming 48 T.C. 308 (1967) ; *Commissioner* v. *Peurifoy*, 254 F. 2d 483 (C.A. 4, 1957), affirmed per curiam 358 U.S. 59 (1958). We must therefore determine whether this exception is applicable to the present set of facts.

In *Commissioner* v. *Peurifoy, supra*, the Court of Appeals for the Fourth Circuit stated:

If we assume the validity of this exception to the rule of *Commissioner of Internal Revenue* v. *Flowers*, * * * it is essential that the employment away from the established tax home shall be temporary in contemplation at the time of its acceptance * * * [254 F. 2d at 486.]

We have considered the facts presented, and though the decision is a difficult one, we must conclude that during the year in issue, petitioner did not contemplate temporary employment, but rather intended to and did in fact acquire a recurring seasonal place of employment which cannot, in this Court's opinion, be distinguished from *Flowers*. In support of this conclusion we note that petitioner was offered the Florida position due to his past experience at that track, indicating a reasonable expectation of maintaining the position. Petitioner testified that in his opinion so long as his work was satisfactory he would continue to be employed by the track owners. He was informally notified at the end of each season that he had a job the following year. The year in issue, 1968, was the third year petitioner held the same position, further demonstrating the existence of seasonal recurring employment. In addition, we note that petitioner had no form of employment in the Phoenix area. Rather, he had acquired a job prior to acceptance of the position in question, but withdrew from such employment to accept the Florida job. His wife did not remain in Phoenix during the racing season but accompanied petitioner to Florida.

In short, petitioner's decision to live in Phoenix and work in Florida was purely personal and was not required by the "exigencies of the business."

In support of this conclusion we note that in *Maurice M. Wills*, 48 T.C. 308 (1967), the taxpayer was a baseball player with the Los Angeles Dodgers. He incurred expenses for travel, meals, and lodging while in Los Angeles. The taxpayer also maintained a residence in Spokane, Wash., where he resided during the off-season. The Tax Court disallowed the deduction of expenses incurred in Los Angeles holding that petitioner's post of duty was in Los Angeles, and that his motives for maintaining a home in Spokane were personal rather than business oriented. The Ninth Circuit in affirming the decision, stated the following:

> Nor are the decisions in cases such as Harvey v. Commissioner * * * and Wright v. Hartsell, * * * here controlling. In *Harvey*, we stated that an employee might be said to change his tax home if there is a reasonable probability known to him that he *may be employed for a long period of time at his new station*, and held that the particular taxpayer had not changed his tax home where employment at the new station normally lasted only a few months. In Wright v. Hartsell, we stated that where it appears probable that a taxpayer's employment outside the area of his residence will be "temporary" or "short," then his travel expenses are deductible, but that where it appears the work will continue for an "indefinite" or "substantially long" period, the deduction is disallowed. *At the beginning of the period here in question, Wills had completed three successful seasons with the Dodgers and could reasonably expect this employment to continue* * * * [Emphasis supplied. 411 F. 2d at 541.]

It is apparent from the above-quoted language that the Ninth Circuit does not equate a recurring seasonal position with the "temporary" exception enunciated above. See also *Dyer* v. *Bookwalter*, 230 F. Supp. 521 (W.D. Mo. 1964); cf. *Truman C. Tucker, supra; Henson* v. *United States*, 338 F. Supp. 599 (S.D. Tex. 1971).[4]

Petitioner contends however that since he did in fact lose the job in question this demonstrates the uncertainty of the position. He further argues that due to his medical history he would under no circumstances have moved to Florida.

Turning first to petitioner's loss of employment we point out that hindsight is not the determining factor. Cf. *Kentucky Central Life Insurance Co.*, 57 T.C. 482 (1972). Rather, the Court must look to the party's intent at the time the position was acquired to ascertain if it was "temporary in contemplation at time of acceptance." *Commissioner* v. *Peurifoy, supra* at 486. We feel it was not.

---

[4] We have considered *Nat Glogowski, Sr.*, T.C. Memo. 1967-236, on which petitioner relies, and the cases cited therein, and find them to be factually distinguishable.

Upon an examination of the entire record we conclude that petitioner was not temporarily away from home while employed in Pensacola, Fla.

*Decision will be entered for the respondent.*